## McFaddin Rice Milling Company, Demandante y Apelante, *v.* Maldonado, Demandado y Apelado.

## Apelación procedente de la Corte de Distrito de Ponce en pleito sobre ejecución específica de un contrato.

### No. 2717.—Resuelto en febrero 6, 1923.

Compraventa Mercantil — Interpretación de Contratos. — Interpretando un contrato mercantil de compraventa de arroz, en el cual, respecto al tiempo de embarque y a la forma de transporte, se hizo constar:

"*When*_____embarque durante abril.

"*How ship*___por vapor."

*Se resolvió:* que aunque el molino no estuviera situado en la costa, la palabra "embarque" no significa que el medio de transporte sea el ferrocarril y que la expresión "por vapor" no significa prohibición de enviarlo por goleta.

Id.—Obligaciones Contractuales.—Si una parte se impone una obligación que pueda cumplirse, debe estar y pasar por ella a menos que el cumplimiento se haga imposible por un acto inevitable (*act of God*), por la ley o el acto de la otra parte. Las dificultades imprevistas no excusarán el cumplimiento. Cuando las partes nada han dispuesto sobre excusas, deben prevalecer los términos del contrato. El que celebra un contrato nunca puede estar enteramente seguro de que podrá cumplirlo cuando llegue el momento, y su verdadera esencia es que él asume el riesgo dentro de los límites de su compromiso.

Id.—Id.—Por regla general cuando una parte se compromete expresamente a cumplir cierto acto su compromiso le impone un deber cuyo cumplimiento no puede ser excusado demostrando su inhabilidad por razón de la intervención de terceras personas.

Id.—Contratos "C. I. F."—La abreviación "c. i. f." a veces se usa en transacciones comerciales especialmente en Inglaterra, significando costo, aseguro y flete. Un vendedor de acuerdo con un contrato de venta que contiene tales términos tiene primero que embarcar en el puerto de embarque artículos de la descripción contenida en el contrato; segundo, obtener un contrato de fletamento conforme al cual los artículos serán entregados en el punto de destino que se intenta en el contrato; tercero, convenir en un aseguro en las condiciones corrientes en el negocio que pueda obtenerse para beneficio del comprador; cuarto, llenar una factura; y finalmente presentar estos documentos al comprador de modo que pueda saber cuál es el flete que tiene que pagar y obtener la entrega de los artículos, si llegan, o recobrar su pérdida si se pierden en el viaje. Tales términos constituyen un convenio de que los artículos, siempre que sean los convenidos en el contrato, *serán entregados a bordo del barco en el puerto de embarque.*

Id.—Tiempo como Elemento Contractual.—En un contrato mercantil la declaración en que se describe la materia del contrato o algún elemento esencial,

como por ejemplo, el tiempo y lugar, generalmente se considera como una garantía o requisito previo, pudiendo la parte perjudicada rechazar todo el contrato por su falta o incumplimiento.

Los hechos están expresados en la opinión.

Abogados de la apelante: *Sres. F. Manuel Toro* y *O. B. Frazer.*

Abogados del apelado: *Sres. J. A.* y *A. S. Poventud.*

El Juez Asociado Sr. Franco Soto, emitió la opinión del tribunal.

La demandante en este caso, que es una corporación domiciliada en el Estado de Texas, ciudad de Beaumont, y el demandado, residente en Ponce, Puerto Rico, celebraron el 19 de abril de 1920 un contrato por el cual el segundo compró a la primera 300 *pockets* de arroz c. i. f. para embarque durante el mes de abril de 1920.

El arroz fué embarcado en el puerto de Galveston el día 24 de mayo de 1920 y llegó a Ponce el 15 de junio de 1920. El demandado rehusó recibir el artículo alegando haber llegado fuera de tiempo por lo que la demandante interpuso la demanda de este caso, exigiendo la ejecución específica del contrato.

Al terminar la práctica de la prueba del demandante, se presentó por el demandado una moción de *nonsuit,* y la corte inferior, resolviendo dicha moción, dictó la siguiente resolución:

"La corte, resolviendo la moción de *nonsuit,* la declara con lugar sosteniendo el fundamento tercero de la misma, por ser insuficiente la demanda y la prueba. El contrato objeto del litigio requería el embarque del arroz por vapor durante abril, de 1920, y el arroz no fué embarcado hasta mayo 25; el tiempo es la esencia del contrato, el cual solamente puede cumplirse poniendo los géneros a bordo de la embarcación dentro del tiempo convenido. Por estas razones, la corte desestima la demanda y ordena se archive con costas. Que se registre una sentencia de acuerdo con esta resolución."

La demandante estableció apelación y asignó como errores los siguientes:

"I. La Corte cometió error en la construcción del contrato cuando dice que según el contrato el arroz debe embarcarse por valor durante abril.

"II. La corte cometió error en resolver que la demandante no había cumplido con el contrato.

"III. La corte cometió error en resolver que el tiempo era la esencia del contrato."

Podemos considerar conjuntamente el primero y tercer error, pues uno y otro se refieren al sentido que debe dársele a determinadas palabras del contrato y al "tiempo" como base esencial en que pueda descansar la interpretación de dicho contrato:

El texto literal del contrato dice:

"*Order No.* Enc. A. Abril 10, 1920.—*McFaddith Rice Milling Co.*—*Ship to* José Maldonado.—*At* Ponce.—*When. How ship:* embarque durante Abril por vapor 300 *pockets* arroz No. 121, a $11.25 c. i. f. 100 lbs. netas, oferta para confirmar.—A. Barasorda, por Díaz. José Maldonado.—Conforme a $11.50 c. i. f.—Aceptado hoy abril 19/29.—A Barasorda, Díaz.—José Maldonado."

De la prueba aparece que el lote de arroz salió del puerto de Galveston el 24 de mayo de 1920 y el barco arribó a Puerto Rico el 15 de junio de 1920. Al ser requerido el demandado para que se hiciera entrega del arroz, dicho demandado escribió a la demandante rehusando recibir dicho artículo, en carta que dice:

"Playa Ponce, junio 17, 1920.—Sr. Angel Barasorda, Ponce, P. R.—Muy Sr. mío:—Motiva la presente para avisarle el vapor Gera que está en este puerto nos trae 300 *pockets* de arroz No. 121 el que dejamos por cuenta de sus representados McFadding Rice Milling Co. por creer ha llegado fuera de tiempo.—De Ud. atto. S. S.—(Firmado) José Maldonado."

La demandante contestó entonces en la siguiente forma:

"Ponce, P. R. junio 18, 1920.—Sr. José Maldonado.—Playa Ponce, P. R.—Muy Sr. mío:—Correspondo a su atta. del 17 d/c y enterado de sus particulares, paso a manifestarle que no puedo aceptar su resolución de dejar por cuenta de mis representados el lote

de arroz número 121 por haber llegado fuera de tiempo, porque al día siguiente de haber sido aceptada la operación el molino embarcó el arroz según puede verse por el conocimiento del ferrocarril, y el único vapor que salió de Galveston desde la fecha que se hizo el contrato hasta la llegada de la mercancía, fué el 'Lake Gera' que trajo el arroz para usted.''

Planteada como ha quedado la cuestión por los términos del contrato y por los hechos ocurridos, lo que nos corresponde resolver es si la corte inferior interpretó rectamente el sentido literal de las palabras usadas en el cuerpo del contrato de acuerdo con la intención de las partes contratantes y si el ''tiempo'' constituyó, en consecuencia, la esencia del contrato.

El art. 1248 del Código Civil dice:

''Art. 1248.—Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

''Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas.''

La simple lectura del contrato otorgado el 19 de abril de 1920 nos dice que sus términos son claros y precisos. Está redactado en un lenguaje comercial en donde la expresión es siempre lacónica, concisa y sin rodeos. El contrato se formalizó el 19 de abril de 1920 y en él se pactó la fecha de embarque de la mercancía y el medio de transporte, todo lo que fué estipulado expresamente con las siguientes palabras.

''*When* _____embarque durante abril.
''*How ship*_____por vapor.''

El juez sentenciador interpretó esas palabras en sentido de que ''el contrato requería el embarque del arroz por vapor durante abril,'' y que ''solamente puede cumplirse el contrato poniendo los géneros a bordo de la embarcación dentro del tiempo convenido.'' El apelante alega que dicho juez tomó las palabras ''durante abril'' en conexión con la palabra vapor, en vez de concordarla con la palabra

"cuando" (*when*), y que de este modo se había cambiado el sentido del contrato. Parece que la interpretación del contrato por la apelante es que el vendedor debe embarcar el arroz "durante abril," significando que el embarque se refería al ferrocarril como medio de transporte y además, que el referido arroz había de ser transportado "por vapor" y no "por goleta." Sin embargo, tal interpretación resulta contraria al sentido literal del contrato y en contradicción con las alegaciones de la misma demanda.

Las palabras "embarque durante abril" responden a la palabra "cuando" (*when*) para significar la fecha de embarque, o sea, el "tiempo" dentro del cual el vendedor debe embarcar la mercancía, y también se refiere al medio de transporte, toda vez que el verbo "embarcar," ya por su etimología de "em" y "barco," ya por su sentido gramatical de "meter o entrar en un buque," no puede referirse ni aun en el lenguaje usual y corriente al transporte "por ferrocarril."

"Embarcar . . . De em y barco. Dar ingreso en una embarcación . . . Aunque este verbo se emplea a veces en el significado de montar o subir a un coche, ferrocarril, etc., como en la frase *las mercancías fueron embarcadas en el ferrocarril*, tal uso no es tolerable." Enciclopedia Universal Ilustrada Europeo-Americana de Hijos de J. Espasa, tomo 19, pág. 913.

"Embarcar: Meter alguna cosa en la embarcación. . . . De "em" y "barco". Diccionario de la Lengua Española, por M. Rodríguez Navas, pág. 555.

"Enbarcar: Meter o entrar en un buque." Diccionario de la Lengua Castellana, por la Academia Española, 1ª. edición, por D. R. V., pág. 383.

"Embarcar" significa: *"To embark, to ship, to put on shipboard."* New Velázquez Spanish-English Dictionary, First Print, page 261.

Después de lo que debe entenderse por "embarcar" dicha palabra determinó en el contrato la clase de medio o modo de transporte y las palabras "por vapor" fijaron me-

jor el sentido del medio elegido.   Pero si aun se nos ocurrie-
ran dudas sobre la interpretación del contrato y se nos hi-
ciera difícil descubrir con certeza cuál había sido la inten-
ción de las partes, tales dudas quedarían disipadas por la
misma demanda, en la cual, en el hecho segundo, se alega:

"2. Que el día 19 de abril de 1920 el demandado José Maldo-
nado compró a la demandante en este caso, ésta representada por su
agente en Ponce, don Angel Barasorda, 300 *pockets* de arroz, de cien
libras cada uno, número 121, a razón de $11.25 el *pocket*, c. i. f. Ponce,
para embarque por el puerto de Galveston, Texas, durante el mes de
abril de 1920."

Esta es una admisión que claramente expresa: 1°., tiempo
de embarque: durante el mes de abril de 1920; 2°., medio
de transporte: por vapor dentro de esa fecha; y 3°., sitio
de embarque: Por el puerto de Galveston, Texas.   No en-
contramos nada en la prueba que se diga otra cosa ni menos
que las palabras del contrato significaran que el despacho de
arroz debía hacerse por embarque en ferrocarril en el mo-
lino de la demandante durante el mes de abril de 1920, como
la apelante alega, y que el sentido de la expresión "por va-
por" lo que significaba era la prohibición del transporte "por
goleta."   Alega también la apelante que siendo ésa la ver-
dadera interpretación del contrato y radicando el molino en
Beaumont, Texas, desde donde no puede el arroz embarcarse
por mar, dicho artículo no podía llegar al puerto de Galves-
ton, en menos de tres o cuatro días, y que habiéndose firmado
el contrato en abril 29 de 1920 para embarque durante abril,
no podía ser embarcado desde aquel puerto durante dicha
fecha, puesto que no quedaba más que un día en el mes de
abril después de firmado el contrato.   En tales condiciones,
en verdad, resultaba la imposibilidad física de cumplirse el
contrato, pero toda la argumentación de la apelante en ese
punto descansa en una premisa falsa, como es haber tomado
por fecha del contrato el 29 de abril, cuando del contrato
mismo y de la demanda aparece firmado dicho contrato el 19

de abril de 1920, no siendo un día el que faltaba para terminación del mes sino once días que era el tiempo suficiente que se había previsto para hacer el trayecto de Beaumont a Galveston y poner la mercancía a bordo del buque.

De la prueba resulta y además se admite en la demanda que el vapor donde fué embarcado el arroz salió del puerto de Galveston el 24 de mayo de 1920 y arribó al puerto de Ponce el 15 de junio de 1920. Se alega además en la demanda que no le fué posible a la demandante el embarque de la mercancía antes de esa fecha a pesar de haber hecho todas las diligencias del caso y porque el motivo de no haber salido en fecha anterior ningún vapor con destino a Puerto Rico a contar de la fecha del contrato, fué el hecho de existir una huelga en la isla entre los trabajadores del muelle. Siendo ésa la situación de las cosas, ella nos conduce a considerar la cuestión relativa al "tiempo" como esencia del contrato y examinar si fué o no el deber de la demandante de despachar el arroz desde el puerto de Galveston durante abril de 1920.

Es regla ya conocida que el tiempo como cuestión de ley es de esencia en los contratos, pero tal regla admite sus excepciones. También se ha reconocido que no es indispensable estipular expresamente que el tiempo es la condición *sine qua non* del contrato para que se considerase como esencia del mismo, porque tal condición puede resultar de la naturaleza del mismo o de las circunstancias del caso. En este caso se estipuló la fecha en que debía ser embarcada la mercancía, de modo que se fijó expresamente y no se dejó que se dedujera por implicación o inferencia; pero si a la condición expresa añadimos la naturaleza del contrato que nos ocupa, que es la compra de un artículo de comercio y que su precio fluctúa en el mercado de tiempo en tiempo, a veces de un día, semana o mes para otro y en donde el comerciante al cerrar su transacción ha calculado determinadas circunstancias que aunque de carácter especulativo no son menos

probables para un fin de lucro o margen en el precio de reventa sin perder de vista el riesgo de la pérdida y que para ello el tiempo que tardara en llegar a su poder es la base principal de toda especulación, la conclusión se impone de que consideramos que el tiempo ha sido la esencia del contrato en el presente caso.

"En los contratos celebrados entre comerciantes el tiempo es un elemento esencial. El tiempo del embarque es el medio corriente y conveniente para fijar el tiempo probable de arribo, con el fin de suministrar fondos para pagar las mercancías, o de cumplir contratos con terceras personas." *Norrington* v. *Wright,* 29 L.ed. 266, 370. 115 U. S. 189 y casos citados.—*Cleveland Rl. Mi'. Co.* v *Rhodes,* citando a *Norrington* v. *Wright, supra,* 30 L.ed. 920, 922.   121 U. S. 255.

"Un contrato para la venta de harina que ha de embarcarse por un vapor que sale en el mes de febrero fué infringido cuando, si bien la harina fué entregada en el muelle para ser embarcada en febrero, no fué enteramente puesto a bordo hasta marzo 3 y el vapor salía en marzo 8, pues generalmente, en contratos mercantiles el tiempo es un elemento esencial puesto que la fecha de embarque es en tiempo ordinario y conveniente para fijar la fecha probable del arribo con el fin de proveer fondos o cumplir contratos con terceras personas. *Connell Bros. Co.* v. *H. Diederichsen & Co.,* 213. Fed. Rep. 737.

Por otra parte, la apelante alega que la demora para cumplir el contrato se debió a que la compañía de vapores en Galveston no se aventuró a enviar vapor alguno hasta el 24 de mayo de 1920, por existir en Puerto Rico una huelga en los muelles.   Pero las autoridades y la jurisprudencia están contestes en el sentido de que el motivo alegado no constituye una excusa legal.

"Si una parte se impone una obligación que pueda cumplirse, debe estar y pasar por ella a menos que el cumplimiento se haga imposible por un acto inevitable (*Act of God*), por la ley o el acto de la otra parte (el acto del demandado, lo que no sucedió en este caso). Las dificultades imprevistas no excusarán el cumplimiento.   Cuando las partes nada han dispuesto sobre excusas, deben prevalecer los términos del contrato.

"El que celebra un contrato nunca puede estar enteramente seguro de que podrá cumplirlo cuando llegue el momento, y su verdadera esencia es que él asume el riesgo dentro de los límites de su compromiso." *Columbus Railway and Light Co.* v. *Columbus,* 63 L.ed. 669, 249 U. S. 402; *United States v. Gleason,* 175 U. S. 588, 602.   44 L.ed. 284, 289.

"Por regla general cuando una parte se compromete expresamente a cumplir cierto acto su compromiso le impone un deber cuyo cumplimiento no puede ser excusado demostrando su inhabilidad por razón de la intervención de terceras personas, y se ha resuelto que el vendedor no queda exento del cumplimiento de su contrato para vender y entregar mercaderías debido a una huelga que obstaculice el acto de tratar de obtener dicho vendedor el objeto de la venta o que aumenta su costo para él." 23 R. C. L. pág. 1335.

Además, la defensa de una huelga en Puerto Rico es cuestión que se alega solamente en la demanda y no está sostenida por la prueba, pero suponiendo que tuviéramos conocimiento judicial de tal hecho a los fines solamente de esta argumentación, no es un caso de defensa o excusa como se deja establecido más antes.

El último error de la apelante se refiere al resolver la corte inferior que la demandante no había cumplido con su contrato.

La apelante alega de que se trata de un contrato c. i. f. y que bajo las condiciones generales y forma usual de este contrato la demandante cumplió con los términos del mismo al instante de hacer entrega de la mencancía al ferrocarril.

En el cuerpo del contrato celebrado por las partes se encuentran insertas las letras c. i. f. y éstas representan las letras iniciales en inglés de las palabras *"cost, insurance and freight."*

"C. I. F.   Es una abreviación de las palabras 'costo, aseguro y flete,' usadas en relación con cotizaciones y contratos comerciales para significar que en el precio de la mercancía se incluyen todos los gastos hasta el puerto de destino.   También es una abreviación de las palabras 'factura consular libre' (*consular invoice free*)." 11 C. J. 765.

El contrato así abreviado es de uso corriente en Inglate-
rra en las transacciones mercantiles entre comerciantes, pero
introducido en los Estados Unidos en los últimos años y por
esto no es abundante la jurisprudencia que existe en rela-
ción con la interpretación que se ha dado a dicho contrato
por los tribunales americanos. Pero continuando la discu-
sión en este caso, la apelante sostiene que bajo un contrato
de tal naturaleza el deber del vendedor es entregar la mer-
cancía a una compañía de transporte, mediante el conoci-
miento de transporte o embarque, obtener una póliza para
asegurar la mercancía contra riesgo marítimo y ofrecer al
comprador para su entrega los documentos relacionados; y
fundada en tales condiciones la apelante dice en su alegato:

"En nuestro caso la prueba demuestra que el arroz fué embarcado
del molino durante abril y aunque llegó a orillas del mar (*seaboard*)
o sea Galveston, durante el mes de abril, y que cualquiera demora
que sufrió después fué debido a que la compañía no mandó sus va-
pores a Puerto Rico por causa de la huelga de estibadores. La prueba
demuestra, además, que el vendedor consiguió un contrato para el
transporte de la mercancía de Ponce, un conocimiento a Ponce, y una
póliza de seguros, y que mandó todos estos documentos al comprador
por medio del banco y junto con la factura y giro correspondiente.
Bajo esas circunstancias, y admitido que el arroz era de la calidad
y tipo comprado en cuanto a cuyo hecho no hay prueba contraria,
la responsabilidad de la demandante cesó al instante de la entrega al
ferrocarril. Desde ese momento el título al arroz pasó al comprador,
y nació la obligación de pagar el precio, aun en el caso extremo de
nunca llegar el arroz a Ponce."

Pero las condiciones que señala la apelante al contrato
c. i. f. ni son todas las que debe reunir dicho contrato ni su
argumentación está basada en la exactitud de tales condi-
ciones. El hecho de que basta la entrega de la mercancía a
un ferrocarril por el vendedor lo sería en el caso que así
fuera convenido expresamente, pero no porque se sobren-
tendiera que ésa era una de las condiciones en general del
contrato. En contrario de la teoría del demandante las au-

toridades sostienen como primer requisito embarcar en el puerto de embarcación los géneros de la descripción contenidos en el contrato y parece que este requisito es mandatorio y no preceptivo.

"C. I. F.; C. A. F.   La abreviación 'c.i.f.' a veces se usa en transacciones comerciales especialmente en Inglaterra, significando costo, aseguro y flete.   Un vendedor de acuerdo con un contrato de venta que contiene tales términos tiene primero que embarcar en el puerto de embarque artículos de la descripción contenida en el contrato; segundo, obtener un contrato de fletamento conforme al cual los artículos serán entregados en el punto de destino que se intenta en el contrato; tercero, convenir en un aseguro en las condiciones corrientes en el negocio que pueda obtenerse para beneficio del comprador; cuarto, llenar una factura; y finalmente presentar estos documentos al comprador de modo que pueda saber cuál es el flete que tiene que pagar y obtener la entrega de los artículos, si llegan, o recobrar su pérdida si se pierden en el viaje.   Tales términos constituyen un convenio de que los artículos, siempre que sean los convenidos en el contrato, *serán entregados a bordo del barco en el puerto de embarque.*" (Itálicas son nuestras).   23 R. C. L. 1335.

Aparte de lo que dejamos dicho, en el contrato de 19 de abril de 1920 se pactó expresamente la fecha en que debía embarcarse la mercancía y de acuerdo con la interpretación que ya hemos dado a la palabra "embarque" el requisito de poner a bordo del vapor los géneros cuya descripción contiene el contrato, dentro del tiempo convenido, no fué cumplido por la demandante y, por tanto, la corte inferior no cometió el error afirmando que dicho contrato fué quebrantado por la demandante.

"En un contrato mercantil la declaración en que se describe la materia del contrato o algún elemento esencial, como por ejemplo, el tiempo y lugar, generalmente se considera como una garantía o requisito previo, pudiendo la parte perjudicada rechazar todo el contrato por su falta o incumplimiento." *Norrington* v. *Wright,* 29 L.ed. 365; 115 U. S. 189, y casos citados.

A la luz de la cita anterior la claridad de nuestra inter-

pretación del contrato es manifiesta en el sentido que lo he-
mos hecho y, por tanto, y por los razonamientos expuestos,
la sentencia debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Aso-
ciados Wolf, Aldrey y Hutchison.