WILSON & Co., INC., demandante y apelante, *v.* MARTÍN y JOSÉ APARICIO, haciendo negocios bajo la razón social de APARICIO HERMANOS, demandados y apelados.

No. 5180.—*Sometido:* Junio 26, 1930. *Resuelto:* Julio 28, 1931.

 

*Henry G. Molina, F. B. Fornaris* y *M. León Parra,* abogados de la apelante; *Ramón Dapena* y *V. Zayas Pizarro,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Esta apelación ha sido establecida por la demandante Wilson & Co., Inc., contra sentencia que declaró sin lugar su demanda con las costas, dictada a moción de los demandados hecha después que el demandante terminó la presentación de su prueba (*nonsuit*).

 La cuestión fundamental en este litigio es la interpretación de una palabra del contrato que celebraron las partes. Las otras son subsidiarias de ella.

J. A. Mirabal, empleado de Goble & Jiménez, que es el agente en Ponce de la demandante, celebró con los demandados el contrato que copiamos.

"Goble & Jiménez—Provision Brokers.—Tetuán St. No. 49—San Juan, P. R.—Orden No. 57, fecha enero 25, 1928. Comprador Aparicio Hnos., Ponce. 2 embarques quincenales en febrero. Por cuenta de Wilson & Co. Condiciones: usual o ½% cash. 300 jaulas 2/37 manteca pura Ideal a 13.95 Cif Ponce incluso envase. Conforme: J. A. Mirabal, Aparicio Hnos."

La primera partida de 150 jaulas de esa manteca fué despachada por ferrocarril en Kansas City, Estado de Kansas, donde el demandante tiene su planta, el 4 de febrero de 1928 para ser transportada al puerto de New Orleans y embarcada en el vapor "Isabela" que iba a salir de él el 8 del mismo mes, pero no fué embarcada hasta el 17 de febrero en otro vapor nombrado Montoso, que llegó a esta Isla algunos días después. Por no haber sido embarcado ese lote en el vapor en la primera quincena de febrero se negaron los demandados

a aceptarlo y pagarlo. El segundo lote fué aceptado y pagado por los demandados.

La contención entre las partes es, según los apelados, que la cláusula del contrato que dice que se harían "2 embarques quincenales en febrero", significa que la mercancía debió ponerse en el barco en la primera quincena de febrero y no el 17 de ese mes; y la del apelante es que la palabra "embarque" o "embarcar" significa no sólo poner en barco sino también poner en ferrocarril, por lo que habiendo despachado la mercancía por ferrocarril el 4 de febrero quedó cumplido así su contrato y los demandados están obligados a pagar el precio de ese lote.

En el caso de *McFaddin Rice Milling Co.* v. *Maldonado*, 31 D.P.R. 472, que fué resuelto por este tribunal el 6 de febrero de 1923, fué tratada esa cuestión diciéndose lo siguiente:

"La simple lectura del contrato otorgado el 19 de abril de 1920 nos dice que sus términos son claros y precisos. Está redactado en un lenguaje comercial en donde la expresión es siempre lacónica, concisa y sin rodeos. El contrato se formalizó el 19 de abril de 1920 y en él se pactó la fecha de embarque de la mercancía y el medio de transporte, todo lo que fué estipulado expresamente con las siguientes palabras:

"*When* . . . . . . embarque durante abril.

"*How ship* . . . . por vapor.

"El juez sentenciador interpretó esas palabras en sentido de que 'el contrato requería el embarque del arroz por vapor durante abril,' y que 'solamente puede cumplirse el contrato poniendo los géneros a bordo de la embarcación dentro del tiempo convenido.' El apelante alega que dicho juez tomó las palabras 'durante abril' en conexión con la palabra vapor, en vez de concordarla con la palabra 'cuando' (*when*) y que de este modo se había cambiado el sentido del contrato. Parece que la interpretación del contrato por la apelante es que el vendedor debe embarcar el arroz 'durante abril', significando que el embarque se refería al ferrocarril como medio de transporte y además, que el referido arroz había de ser transportado 'por vapor' y no 'por goleta'. Sin embargo, tal interpretación resulta contraria al sentido literal del contrato y en contradicción con las alegaciones de la misma demanda.

"Las palabras 'embarque durante abril' responden a la palabra 'cuando' (*when*) para significar la fecha de embarque, o sea, el 'tiempo' dentro del cual el vendedor debe embarcar la mercancía, y también se refiere al medio de transporte, toda vez que el verbo 'embarcar', ya por su etimología de 'em' y 'barco', ya por su sentido gramatical de 'meter o entrar en un buque', no puede referirse ni aun en el lenguaje usual y corriente al transporte 'por ferrocarril'.

" 'Embarcar . . . De em y barco. Dar ingreso en una embarcación . . . Aunque este verbo se emplea a veces en el significado de montar o subir a un coche, ferrocarril, etc., como en la frase *las mercancías fueron embarcadas en el ferrocarril*, tal uso no es tolerable.' Enciclopedia Universal Ilustrada Europeo-Americana de Hijos de J. Espasa, tomo 19, pág. 913.

" 'Embarcar: Meter alguna cosa en la embarcación. . . De 'em' y 'barco'. Diccionario de la Lengua Española, por M. Rodríguez Navas, pág. 555. " 'Embarcar: Meter o entrar en un buque.' Diccionario de la Lengua Castellana, por la Academia Española, 1ª. edición, por D. R. V., pág. 383.

" 'Embarcar' significa: *'To embark, to ship, to put on shipboard'*, New Velázquez Spanish-English Dictionary, First Print, page 261.

"Después de lo que debe entenderse por 'embarcar' dicha palabra determinó en el contrato la clase de medio o modo de transporte y las palabras 'por vapor' fijaron mejor el sentido del medio elegido."

A lo dicho en ese caso podemos agregar que en el diccionario de la Lengua Castellana publicado por la Real Academia Española en 1914 se define la palabra "embarcar" de la siguiente manera: "embarcar (de 'en' y de 'barco') a. Dar ingreso a personas, mercancías, etc., en una embarcación." Y la palabra "embarque" así: "Acción de embarcar géneros, provisiones, etc."

Por consiguiente, de acuerdo con las palabras usadas en el contrato celebrado entre las partes no puede haber duda de que el apelante se comprometió a poner en barco el primer lote de la mercancía en la primera quincena de febrero y de que no lo hizo.

Dice el apelante con respecto a la sentencia citada que lo dicho en ella, que hemos copiado, es un *dictum* que no obligaba a la corte inferior porque en el contrato a que se

refiere se estipuló el embarque "en vapor." No es así, porque la palabra "vapor" sólo determinaba la clase de barco y porque la contienda en ese asunto era, como en éste, si la palabra "embarque" significa poner la mercancía en un barco o si también significa ponerla en ferrocarril.

■ El apelante entiende que como casi todo el comercio de esta Isla es con los Estados Unidos de América debe darse a la palabra "embarque" la interpretación que a la palabra inglesa "shipment" se ha dado en algunas sentencias de aquellos tribunales. Nos parece lo más razonable, sin embargo, que habiendo sido hecho el contrato en esta Isla y en español debe darse a las palabras usadas el significado general y corriente que tales palabras tienen en español.

■ Los términos del contrato, a nuestro modo de ver, son claros en este caso y no dejan lugar a dudas ni ambigüedad sobre la intención de los contratantes, por lo que hay que estar al sentido literal de sus cláusulas, según dispone el artículo 1248 del Código Civil. Por eso no cometió error la corte inferior al eliminar una alegación de la demanda original y la prueba que se presentó en el juicio, tendentes ambas a demostrar que la palabra "embarque" significa también en el comercio de esta Isla, según algunas personas, embarque desde la planta productora y que la palabra "embarque" se usa en las declaraciones de expedición en el ferrocarril de esta Isla de las mercancías que se le entregan para su transporte.

Con respecto a la imposición de las costas al apelante no creemos que exista error, pues siendo la palabra "embarque" usada en el contrato de un claro significado, habiendo sido interpretada por este tribunal antes de iniciarse este pleito, y teniendo igual significado su equivalente en el inglés en muchos diccionarios de ese idioma, hubo temeridad en el demandante en llevar a un pleito a los demandados en esas condiciones.

*La sentencia apelada debe ser confirmada.*