BERNARDO PONCE, sustituído por sus herederos ELENA MONZÓN GONZÁLEZ VDA. DE PONCE, BERNARDO CARLOS PONCE y MARÍA VIRGINIA VICTORIA PONCE Y CARBÓ, demandantes y apelados, *v.* F. BADRENA E HIJOS, INC., demandada y apelante.

Número 10598.

*Sometido:* 5 de noviembre de 1952. *Resuelto:* 23 de diciembre de 1952.

*Juan Enrique Géigel* y *Guillermo Silva* y *Luis F. Cuyar,* aboga-
dos de la apelante; *Rafael B. Pérez Mercado,* abogado de

*Elena Monzón González Vda. de Ponce; Antonio Rivera Bre-
nes y Fernando Fornaris, Jr.,* abogado de los apelados *Ber-
nardo Carlos Ponce y María Virginia Victoria Ponce y Carbó.*

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Bernardo Ponce, domiciliado en Argentina, (¹) radicó en la Sección de San Juan del antiguo Tribunal de Distrito de Puerto Rico una demanda en cobro de sentencia contra la firma F. Badrena e Hijo, Inc., corporación debidamente organizada en Puerto Rico. En esa demanda se alega que el demandante inició juicio ordinario contra la demandada en un tribunal de la ciudad de Buenos Aires, República Argentina, en cobro de comisiones mercantiles y gastos incurridos en gestiones que le encomendó la demandada, habiendo dictado el tribunal argentino una sentencia declarando con lugar la demanda y condenando a la demandada a pagar al demandante el importe de las comisiones cobradas, los desembolsos efectuados por el demandante, intereses sobre el monto de la sentencia, costas y honorarios de abogados del demandante, condicionada dicha sentencia a que el importe de la indemnización y gastos deberían ser fijados por peritos arbitradores, de acuerdo con el Código Procesal vigente en la ciudad de Buenos Aires. Se sigue alegando en la demanda que la demandada estuvo debidamente representada en los tribunales argentinos por tres abogados que fueron debidamente autorizados para ello, según escritura de poder transcrita y reseñada en la demanda; que la referida sentencia fué apelada por los representantes de la demandada para ante la Cámara de Apelaciones de lo Comercial de la ciudad de Buenos Aires, y la misma fué confirmada en todas sus partes por resolución de 7 de junio de 1947; que en virtud de tal sentencia confirmatoria la demandada amplió, mediante escritura de poder, las facultades de los abogados argentinos a los fines de que pudiesen designar

---

(¹) En el curso de los procedimientos tramitados en el tribunal inferior Bernardo Ponce falleció y ha sido sustituído por los herederos como demandantes.

árbitros o amigables componedores, con tercero para el caso de discordia, a tenor con la sentencia dictada; que los tres árbitros debidamente designados finalmente emitieron un laudo fijando el importe de las comisiones a pagar por la demandada al demandante en la cantidad de 50,504.47 pesos, moneda argentina, y los gastos incurridos por el demandante en la cantidad de 2,775.08 pesos, moneda argentina, lo cual, sumado a las costas, gastos, intereses, honorarios de abogados del demandante y los honorarios de los árbitros, llega a la suma total de 78,120.20 pesos moneda argentina. [2] Se alega finalmente en la demanda que la sentencia argentina es firme y ejecutiva y no había sido pagada ni en todo ni en parte por la demandada, por lo que se suplicó del tribunal a quo que dictase una sentencia condenando a la demandada a pagar la cantidad anteriormente mencionada, con los intereses correspondientes y costas, gastos y honorarios de abogados.

Compareció la demandada y presentó una moción de desestimación de la demanda que fué declarada sin lugar. Después de varios incidentes la demandada presentó una contestación enmendada en que admite que el tribunal argentino dictó la sentencia final a que se refiere la demanda pero niega la validez o eficacia jurídica de la referida sentencia, alegando en contrario que el tribunal argentino actuó sin jurisdicción al dictar la sentencia, en forma contraria a lo dispuesto en el artículo 4 del apartado 4 del Código de Procedimiento Civil y Comercial para la Capital Federal y Tribunales Nacionales de la República Argentina. Admite la demandada haber conferido facultades a los abogados argentinos a que se refiere la demanda pero niega la jurisdicción, competencia o facultades del tribunal argentino para dictar sentencia en el mismo. También admite la deman-

---

[2] En la sentencia dictada por el Tribunal de San Juan se fija el equivalente en moneda americana de la cantidad a ser pagada por la demandada a la parte demandante en la suma de $16,411.80, a base del tipo de cambio prevaleciente en la fecha en que se radicó la demanda en el caso de autos.

dada lo alegado en la demanda en cuanto al procedimiento y laudo arbitral, aunque niega su validez por ser la sentencia nula de acuerdo con su alegación al efecto de que el tribunal argentino carecía de jurisdicción. En sus defensas especiales la demandada alegó lo siguiente:

Que la corporación demandada siempre ha estado domiciliada en Puerto Rico, siendo ciudadana de los Estados Unidos de América; que el Código de Procedimiento Civil y Comercial ya mencionado dispone que cuando se ejerciten acciones personales la jurisdicción y competencia será la del lugar convenido para el cumplimiento de la obligación y a falta de éste, a elección del demandante, el del domicilio del demandado o el del lugar del contrato, con tal que el demandado se halle en él aunque sea accidentalmente; que en este caso no hubo convenio en cuanto a que la ciudad de Buenos Aires fuere el lugar para el cumplimiento de la alegada obligación de la demandada y que, por lo tanto, el único tribunal competente para entender en la demanda era un tribunal de la ciudad de San Juan; que aun asumiendo la jurisdicción y competencia del tribunal argentino, tal tribunal incurrió en manifiesto error de hecho y de derecho ya que la sentencia se basaba en un supuesto contrato de comisiones, a base de actuaciones del demandante como comisionista de la demandada, en cuanto a la compra de carne de tasajo en Montevideo, Buenos Aires y algunas ciudades del Brasil, cuando la realidad fué que la transacción envuelta equivalía a un contrato de compraventa, siendo el demandante el vendedor y la demandada la compradora.

En la contestación enmendada radicada en el caso de autos se sigue exponiendo que en la contestación radicada en el tribunal argentino se alegó una serie de hechos referentes a las comunicaciones cablegráficas y por carta entre ambas partes que, a juicio de la demandada, implican que lo que hubo fué un contrato de compraventa y no uno de comisiones; que el dictamen del tribunal argentino fué al efecto de que "la calificación jurídica que corresponde a las relaciones que

vincularon a las partes y que da origen a este litigio es la del contrato de comisión a que se refiere el capítulo segundo, del título segundo, del libro segundo del Código de Comercio". Se alega en la contestación enmendada presentada en el caso de autos que la conclusión a que llegó el tribunal argentino en el sentido de que el demandante actuó como comisionista de la demandada es manifiestamente errónea y contraria a la prueba que fué practicada ante dicho tribunal ya que, según se alega, de esa prueba resulta claro que el contrato celebrado por ambas partes fué uno de compraventa de tasajo y no de comisión mercantil. También se alega en la contestación enmendada que es manifiestamente errónea y contraria a la prueba practicada ante el tribunal argentino su conclusión al efecto de que la negociación de compraventa del tasajo fracasó debido a la culpa de la demandada al demorarse en la apertura de un crédito que le fué solicitado por el demandante ya que, según la demandada, la prueba demostró que la demandada no tuvo culpa alguna por el hecho de no haberse podido llevar a cabo el negocio de compra del tasajo. Se alega por la demandada que al dictar la sentencia objeto de la demanda los tribunales argentinos no tuvieron en cuenta las defensas alegadas por la demandada ni pesaron en la debida forma la evidencia practicada y se limitaron a resolver el pleito en favor del demandante en atención a su condición de ciudadano argentino. Alega además la demandada que la sentencia argentina carece de eficacia o validez en los tribunales de Puerto Rico ya que no existe ningún tratado entre los Estados Unidos de América y la República Argentina en virtud del cual se reconozca eficacia en los Estados Unidos o en Puerto Rico a las sentencias dictadas por los tribunales de justicia de la República Argentina o viceversa y alega finalmente la demandada que la sentencia argentina carece de validez o eficacia en Puerto Rico ya que no existe reciprocidad entre los Estados Unidos de América y la República Argentina o entre Puerto Rico y la República Argentina, en lo que se refiere al reco-

nocimiento en los Estados Unidos o en Puerto Rico de las sentencias dictadas por tribunales argentinos, o viceversa.

La vista de este caso tuvo lugar el 19 de mayo de 1950. El demandante presentó como única prueba, sin oposición de la demandada, el legajo de la sentencia dictada por el tribunal argentino, contentivo de: (1) la demanda en el pleito de Buenos Aires; (2) impugnación de la competencia del tribunal de Buenos Aires; (3) contestación a la demanda; (4) resolución sobre competencia; (5) sentencia en primera instancia; (6) resolución en grado de apelación sobre la cuestión de la competencia y sentencia final; (7) laudos de los árbitros que emitieron dictamen pericial sobre la cuantía de la indemnización reclamada y (8) escrito y resolución sobre costas, gastos y honorarios de abogados, peritos del litigio y otros desembolsos. Además, el demandante presentó como prueba, sin oposición de la demandada, varios documentos, incluyendo: (1) volumen impreso compuesto del Código de Procedimiento Civil y Comercial vigente en la ciudad de Buenos Aires, unido al cual aparecen testimonios de abogados de Buenos Aires, debidamente autenticados, y testimonio del Dr. Santos P. Amadeo, también bajo juramento, al efecto de que el referido volumen contiene los códigos y leyes procesales vigentes en la referida capital de la República Argentina y que el mismo es admitido comúnmente en los tribunales de justicia de Buenos Aires como la ley escrita de dicha jurisdicción; (2) testimonios de dos abogados de la ciudad de Buenos Aires al efecto de que las sentencias del Juzgado de Comercio son apelables en segunda y última instancia para la Cámara de lo Comercial con citas de las disposiciones legales en que se base, insertas en el referido Código Civil y Comercial y (3) testimonios suscritos y jurados por A. B. Falcone, banquero y vecino de San Juan, Puerto Rico, a cargo del departamento de cambio extranjero de la sucursal de San Juan del National City Bank de Nueva York, acreditativos de los tipos de cambio entre la moneda

argentina y la moneda americana, en 8 de julio de 1946, 19 de mayo de 1948 y 13 de agosto de 1948.

La demandada presentó, con la oposición del demandante, la siguiente prueba que fué admitida por el tribunal inferior: (1) testimonios de dos abogados de Buenos Aires acreditativos de que, a tenor de jurisprudencia argentina que citan, no pueden desglosarse documentos unidos a un expediente judicial cuando media oposición de la parte contraria y (2) testimonio por exhibición expedido por escribano público de Buenos Aires de cierta correspondencia epistolar y cablegráfica cursada entre ambas partes, incorporada al pleito tramitado en Buenos Aires. Tales documentos están debidamente autenticados.

Después de haber presentado tal prueba la demandada alegó que no tenía en su poder cierta prueba que era necesaria y solicitó un plazo para producirla. El tribunal a quo le concedió tal plazo que se venció el día 31 de mayo de 1950. El día 27 de junio la demandada radicó moción alegando haber obtenido de la secretaría del Juzgado de Comercio de Buenos Aires una certificación oficial de los documentos ofrecidos en evidencia ante dicho tribunal al celebrarse el juicio en Buenos Aires, o sea, la misma prueba ya ofrecida el día de la vista mediante testimonio por exhibición autorizado por escribano público de Buenos Aires y solicitó la demandada de la corte que ordenara la reapertura del caso para presentar dicha certificación como prueba. Habiéndose celebrado el día 25 de septiembre de 1950 una vista sobre la moción de la demandada sobre reapertura del caso, el tribunal inferior resolvió admitir la nueva prueba que es la misma producida el día de la vista anterior, pero certificada ahora por el secretario del Juzgado de Buenos Aires, cuya firma aparece debidamente legalizada. Previo permiso de la corte el mismo día 25 de septiembre el demandante radicó moción acompañada de otra certificación del propio secretario del Juzgado de Buenos Aires, cuya firma aparece debidamente legalizada, acreditativa de que además de las

piezas de prueba que fueron testimoniadas de conformidad a lo ordenado, o sea, la certificación introducida por la demandada, existe en dichos autos otra prueba documental que fué considerada por el tribunal argentino pero que no fué objeto de la certificación presentada por la demandada. En otras palabras, tal como fué admitido por la propia demandada en una moción que mencionaremos más adelante, la certificación presentada por la demandada ante el tribunal inferior no se refería a la totalidad de la prueba presentada ante el tribunal argentino sino que se refería solamente a parte de la prueba presentada ante dicho tribunal.

El día 8 de diciembre de 1950 el tribunal a quo dictó sentencia declarando con lugar la demanda y condenando a la demandada a pagar a la parte demandante la cantidad reclamada de $16,411.80, moneda americana, intereses legales sobre dicha suma a razón del 6 por ciento anual desde el día 13 de agosto de 1948, fecha de la radicación de la demanda en este caso hasta su completo pago y condenando a la demandada a pagar las costas incurridas en este pleito más la cantidad de $3,000 como honorarios de abogados. En sus conclusiones de hecho el tribunal sentenciador determina que fué debidamente probada la sentencia argentina; que tal sentencia no ha sido pagada; que la demandada estuvo representada en el pleito en Argentina por dos abogados y un procurador debidamente autorizados por la demandada; que hubo el laudo arbitral ya mencionado y que a base del tipo de cambio prevaleciente en la fecha que se radicó la demanda la obligación representada en la sentencia envolvía la suma de $16,411.80. Concluye además el tribunal inferior que la certificación del secretario del Juzgado de Buenos Aires presentada por la demandada no comprende toda la evidencia sometida y apreciada por dicho juzgado al dictar la sentencia que se pretende ejecutar, según se desprende de la propia sentencia presentada en evidencia, que se refiere a documentos que no aparecen transcritos en dicha certificación y según se desprende además de la certificación del

propio secretario del Juzgado de Buenos Aires, presentada por el demandante, de la cual resulta que ante el tribunal argentino se presentó evidencia documental que no está inserta en la referida certificación ofrecida por la demandada.

En sus conclusiones de derecho el tribunal inferior resolvió que la sentencia argentina es admisible en evidencia; que es firme y ejecutiva en Argentina, de acuerdo con la propia ley de Argentina que fué admitida en evidencia y que, por lo tanto, dicha sentencia tiene plena fuerza y valor en Puerto Rico y es obligatoria para la demandada; que tal sentencia de Argentina es válida en Puerto Rico de acuerdo con el artículo 428 del Código de Enjuiciamiento Civil de Puerto Rico; que se presume la jurisdicción del tribunal de Argentina y que en este caso el tribunal de Argentina tuvo jurisdicción, ya que la evidencia aportada por la demandada no es suficiente para sostener su impugnación de falta de jurisdicción; resolvió además el tribunal a quo que la evidencia aportada por la demandada no es suficiente para demostrar que el tribunal argentino incurrió en error manifiesto de hecho y de derecho ya que tal certificación presentada por la demandada no contiene toda la evidencia producida ante dicho juzgado y, por lo tanto, que el tribunal inferior no estaba en condiciones de poder apreciar la corrección o incorrección de las conclusiones a que llegó el tribunal argentino al apreciar la prueba sometida a su consideración, ni estaba en condiciones el tribunal inferior de considerar si la aplicación de las leyes argentinas en que se basó la sentencia fué o no correcta. Indica el tribunal sentenciador que estando tal tribunal en la misma posición de un tribunal de apelación tendría que ser colocado en la misma posición en que estaba el tribunal argentino, teniendo ante sí toda la evidencia por él apreciada a la luz de las disposiciones legales aplicables. Concluye además el tribunal a quo que la sentencia argentina está sostenida por los razonamientos de hecho y de derecho en que se basó y que las objeciones que formuló la demandada ante el Tribunal de San Juan

habían sido ya consideradas por el Tribunal de Apelaciones de Argentina y esas objeciones fueron desestimadas por dicho tribunal apelativo de la Argentina ya que no habían sido planteadas formalmente ante la corte de origen, o sea, por constituir un cambio en la teoría de su caso; que la demandada compareció voluntariamente ante el tribunal argentino representada por abogados, con amplia oportunidad para establecer sus defensas de hecho y de derecho y resolvió además el tribunal sentenciador que en Argentina se sigue un debido proceso de ley y que las actuaciones de la demandada al designar un árbitro para fijar la cuantía de la indemnización deben considerarse como un acatamiento de la sentencia dictada en Buenos Aires, estando la demandada impedida de impugnar dicha sentencia.

La sentencia dictada por el Tribunal de San Juan fué notificada a las partes el día 13 de diciembre de 1950. El día 28 de diciembre del mismo año la demandada radicó una moción intitulada: "Moción Solicitando Se Releve a la Demandada de la Sentencia Dictada Contra Ella en este Caso y se Reconsidere Dicha Sentencia." Esa moción no fué notificada a la parte demandante. En dicha moción la demandada alega que el tribunal sentenciador no resolvió las cuestiones de derecho planteadas por la demandada por no habérsele presentado al tribunal toda la evidencia que fué sometida al tribunal argentino. En esa moción la demandada sigue diciendo textualmente lo siguiente: "La demandada admite y reconoce que, no habiéndosele sometido a este Honorable Tribunal toda la evidencia que se practicó ante el Juzgado de Comercio de Buenos Aires, este Honorable Tribunal no está en condiciones de apreciar la corrección o incorrección de las conclusiones a que llegó el Juzgado de Comercio de Buenos Aires, ni está en condiciones de dictaminar sobre la validez o suficiencia del fallo emitido por dicho juzgado." Sigue alegando la demandada en su moción que a tenor del artículo 292 del Código de Enjuiciamiento Civil de Puerto Rico y de la regla 60 (b) de las Reglas de

Enjuiciamiento Civil, y en el ejercicio de una sana discreción, la demandada suplica al tribunal inferior que le releve de los efectos de la sentencia dictada contra ella y reconsidere dicha sentencia, concediendo a la demandada la oportunidad de ofrecer en evidencia la parte de la prueba practicada ante el tribunal argentino que faltaba en los autos de este caso para que el tribunal inferior tenga ante sí la totalidad de la evidencia que fué producida en el tribunal de Argentina. En la moción se alegan distintos hechos en cuanto a conversaciones telefónicas y comunicaciones por escrito entre los abogados de la demandada en Puerto Rico con uno de los abogados de la demandada en Argentina a los fines de que se le enviase a la demandada una certificación en donde se transcribiesen íntegramente todos los documentos ofrecidos por ambas partes ante el tribunal argentino, habiéndose iniciado dichas conversaciones y comunicaciones el 20 de mayo de 1950; que el abogado argentino se confrontó con grandes obstáculos y dificultades en obtener tal certificación; el día 30 de junio de 1950 uno de los abogados de la demandada recibió una certificación que luego se presentó en evidencia, pero que resultó insuficiente; que antes de ofrecer la demandada tal certificación en evidencia, o sea, antes del 25 de septiembre de 1950, los abogados de la demandada notaron que tal certificación no contenía ninguna constancia o manifestación al efecto de que en ella se transcribiese toda la prueba ofrecida ante el tribunal argentino pero que tal omisión fué considerada por los abogados de la demandada como una inadvertencia, creyendo siempre la demandada que toda la prueba estaba incluída en la certificación; que el 25 de septiembre de 1950, al recibir copia de la certificación ofrecida por la parte demandante los abogados de la demandada se percataron que la certificación anterior ofrecida por la demandada no contenía toda la prueba documental existente en los autos del caso seguido ante el tribunal argentino; que después de haber radicado

su alegato el día 1 de noviembre de 1950 los abogados de la demandada iniciaron nuevas gestiones con un abogado argentino para obtener una nueva certificación completa del secretario del tribunal argentino que incluyese la prueba que faltaba y que el día 20 de diciembre de 1950 dicho secretario libró una nueva certificación debidamente legalizada y autenticada, cuya certificación se hallaba, en la fecha de la radicación de la moción, o sea, el 28 de diciembre de 1950, en poder de los abogados de la demandada, y que en dicha nueva certificación se indica que ella se refiere a la totalidad de la prueba aportada por ambas partes. Indica la demandada en su moción que ella pone a disposición de la corte a quo la nueva certificación y solicita entonces la demandada del tribunal sentenciador que señale una nueva vista a tal propósito de admitir en evidencia la certificación oficial de 20 de diciembre de 1950, a los fines de que el tribunal sentenciador tuviese ante sí toda la evidencia que recibió el tribunal argentino, estando así en condiciones de poder resolver este caso en sus méritos. En su moción la demandada finalmente suplica lo siguiente:

"EN MÉRITO DE LO EXPUESTO, la demandada, F. Badrena e Hijo, Inc., respetuosamente suplica a este Honorable Tribunal se sirva relevarla de la sentencia dictada contra ella en este caso y se sirva reconsiderar dicha sentencia, dejando la misma sin efecto y concediendo a la demandada la oportunidad de reabrir este caso al solo efecto de admitir en evidencia la certificación oficial del Secretario del Juzgado de Comercio de Buenos Aires de fecha 20 de diciembre de 1950, con lo cual estará en condiciones este Honorable Tribunal de resolver el caso en sus méritos."

A tal moción la demandada acompañó varios *exhibits* que se refieren a las comunicaciones habidas entre los abogados de la demandada y el abogado argentino ya mencionado, a los fines de la expedición y envío de una certificación que se refiere a la totalidad de la prueba presentada ante el tribunal argentino.

El día 2 de enero de 1951, sin señalar vista de clase alguna, el tribunal sentenciador declaró sin lugar de plano la ya reseñada moción de la demandada de 28 de diciembre de 1950. El día 12 de enero de 1951 la demandada radicó en el tribunal inferior un escrito de apelación, apelando de la sentencia dictada el 8 de diciembre de 1950. La demandada no ha apelado para ante este Tribunal de la ya mencionada resolución de 2 de enero de 1951.

En su apelación contra la sentencia la parte demandada ha señalado los siguientes errores:

"Primer Error: El Tribunal del Distrito Judicial de San Juan cometió error de derecho al declarar sin lugar la moción de la demandada-apelante solicitando la desestimación de la demanda por el fundamento de que, tal y como está la misma redactada, no aduce hechos suficientes para determinar una causa de acción en favor del demandante-apelado.

"Segundo Error: El tribunal sentenciador cometió error y abusó de su discreción, al denegar la moción radicada por la demandada-apelante en 28 de diciembre de 1950, en solicitud de que se la relevase de la sentencia dictada contra ella el día 8 del mismo mes y año, y solicitando que se reconsiderara dicha sentencia.

"Tercer Error: El tribunal sentenciador cometió error al condenar a la demandada-apelante a pagar la cantidad de Tres Mil Dólares en concepto de honorarios de abogado del demandante-apelado."

██ Bajo el primer error señalado, alega la demandada-apelante que la demanda no aduce hechos suficientes para constituir una causa de acción. Como hemos visto, en la demanda se expone que un tribunal argentino dictó una sentencia condenando a la aquí apelante a pagar cierta suma de dinero al demandante, y se solicita del tribunal a quo que dicte a su vez sentencia que decrete el pago de la obligación que surge de la sentencia extranjera. La apelante expone, en síntesis, que en la demanda no se alega que nuestros tribunales estén obligados a reconocer la eficacia, validez y obligatoriedad de una sentencia argentina en virtud de algún

tratado concertado entre Estados Unidos y la República Argentina, y, especialmente, que no se alega en la demanda que la República Argentina le imparta reconocimiento a sentencias de los Estados Unidos o de Puerto Rico, condición previa, dentro del principio de reciprocidad, al reconocimiento de sentencias argentinas por nuestros tribunales, según lo resuelto por la Corte Suprema de los Estados Unidos en el caso de *Hilton* v. *Guyot*, 159 U. S. 113.

Efectivamente, en el caso citado se resuelve, después de una amplia discusión sobre la doctrina de reconocimiento de sentencias extranjeras, (³) que si en Francia no se le imparte reconocimiento a sentencias extranjeras, los tribunales (federales) de los Estados Unidos no deben conferirle reconocimiento a sentencias francesas como concluyentes en cuanto a los méritos del caso, no debiendo aplicarse el concepto de cortesía internacional ("comity") cuando no existe reciprocidad.

La doctrina sentada en *Hilton* v. *Guyot*, supra, ha sido severamente criticada. 2 Beale, *Treatise on the Conflict of Laws*, 1381, 1382, 1385, et seq; 1 Beale, Ob. Cit., 54; Goodrich, *Conflict of Laws*, 3ª ed., 606; 50 *Columbia Law Review* 783, 790, 793; *Status of Judgments Rendered Abroad;* 9 Harv. L. Rev. 430; 38 Harv. L. Rev. 638; 36 Yale L. Journal 542; 34 Yale L. Journal 549; 26 Col. L. Rev. 892; 12 Cornell Law Quarterly 62; 55 Mich. L. Rev. 70; *Johnston* v. *Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121; *Cowens* v. *Ticonderoga Pulp & Paper Co.*, 127 Misc. 898, 217 N.Y.S. 647; *Coulborn* v. *Joseph*, 25 S.E.2d 576. Véanse además las anotaciones en 46 A.L.R. 439, 450 y 148 A.L.R. 991, 997, en donde se determina que la ten-

---

(³) El caso de *Hilton* v. *Guyot*, 159 U.S. 113, podía haberse resuelto a base de que la sentencia extranjera fué obtenida mediante fraude. Debido a ello, el Juez Pound, de la Corte de Apelaciones de Nueva York, dijo, en *Johnston* v. *Compagnie Generale Transatlantique*, 242 N.Y. 381, 152 N.E. 121, que "las cincuenta y cuatro páginas precedentes de la opinión (de *Hilton* v. *Guyot*), pueden ser consideradas como un *'dictum'* magnífico, que merece respeto pero no determina la cuestión."

dencia moderna en los Estados Unidos es la de reconocer sentencias extranjeras "in personam" como concluyentes cuando han sido rendidas sobre los méritos en tribunales extranjeros que tengan jurisdicción sobre los méritos. El Restatement of the Law of Conflict of Laws, adopta una regla contraria a la de *Hilton* v. *Guyot*, supra. Véase sección 434, pág. 517, comentario B: "Una sentencia extranjera debe ser hecha efectiva aunque las sentencias del foro (*forum*) no sean reconocidas en el país extranjero." La crítica formulada al caso de *Hilton* v. *Guyot*, supra, puede sintetizarse en la forma siguiente:

1. Una sentencia extranjera es creadora de derechos y obligaciones privadas, entre personas o entidades particulares, y la realidad de la existencia de esos derechos y obligaciones no debe quedar desvirtuada o afectada por conceptos de descortesía internacional.

2. La calidad de una sentencia extranjera y del sistema de leyes del país en donde se ha dictado la sentencia no depende de la actitud de ese país en cuanto a sentencias de otros Estados.

3. Las doctrinas de Derecho Internacional Privado deben basarse en disposiciones legislativas y no en principios abstractos de cortesía.

4. Las decisiones en cuanto a cortesía internacional deben formularse por la rama ejecutiva o legislativa del gobierno, y no por la rama judicial, ya que envuelven cuestiones políticas y no judiciales.

5. En nuestro mundo moderno de interdependencia entre los Estados, de rápidas comunicaciones integradas entre los países y de fluidez y mutua reacción de las corrientes culturales y jurídicas de los diversos Estados, el interponer murallas y barreras a las actuaciones judiciales de un país civilizado implica la existencia de una actitud anacrónica, irreal y obsoleta de incomprensión y aislamiento intelectual, y mucho más cuando esa actitud se traduce en la adopción de represalias.

Independientemente de los méritos intrínsecos de la opinión dictada en el caso de *Hilton* v. *Guyot*, supra, e independientemente de cualquier cuestión relativa a la falta de obligatoriedad de una opinión de la Corte Suprema de los Estados Unidos en cuanto a cuestiones locales como lo son las que se refieren al Derecho Internacional Privado en cuanto conciernen a sentencias extranjeras que crean derechos privados entre individuos particulares, entendemos y resolvemos que el caso citado de *Hilton* v. *Guyot*, supra, no es aplicable a las circunstancias del caso de autos. En este caso fué ofrecido en evidencia por la parte demandante, y admitido sin oposición de la demandada un estatuto de la República Argentina que dispone que los tribunales argentinos deben reconocer y darle efecto a las sentencias extranjeras bajo ciertas condiciones enumeradas en el estatuto. (⁴) Aunque tal extremo no fué alegado en la demanda, la demanda debe ser considerada como enmendada, aun en apelación, por la prueba que se presentó sin oposición en el juicio. *Martínez* v. *Torres*, 64 D.P.R. 44; *Viñas* v. *Hernández*, 60 D.P.R. 276; *Ruberté* v. *American Railroad Co.*, 52 D.P.R. 371; *Maniscalco & Nuccio* v. *Sancho Bonet, Tes.*, 51 D.P.R. 515; *Portela* v. *Saldaña*, 39 D.P.R. 542; *D'Azizi* v. *Alcaraz*, 40 D.P.R. 915; *El Pueblo* v. *Sucn. Valdés*, 31 D.P.R. 223. Son enteramente razonables las circunstancias enumeradas en el esta-

(⁴) El artículo 559 del *Código de Procedimientos en Materia Civil y Comercial de la Capital Federal y Territorios Nacionales* dispone lo siguiente:

"Art. 559. En defecto de tratados que estatuyan sobre el particular, las ejecutorias de países extranjeros tendrán fuerza en la Provincia, si reúnen las circunstancias siguientes:

"1⁰ Que la ejecutoria haya sido dictada a consecuencia del ejercicio de una acción personal;

"2⁰ Que no haya sido dictada en rebeldía de la parte condenada, siempre que ésta haya tenido domicilio en la República;

"3⁰ Que la obligación que haya dado lugar a la ejecutoria, sea válida según nuestras Leyes;

"4⁰ Que la ejecutoria reúna los requisitos necesarios en la Nación en que se haya dictado para ser considerada como tal y los que las leyes argentinas requieren para que hagan fe en la República."

tuto argentino como condiciones a la efectividad de una sentencia extranjera en la República Argentina, y tales circunstancias no implican ausencia de cortesía internacional de parte de tal país. En vista de ello, una sentencia argentina debe ser considerada por nuestros tribunales como concluyente en cuanto a los méritos del caso, sujeto a las disposiciones del artículo 428 de nuestro Código de Enjuiciamiento Civil, que discutiremos más adelante. La propia Corte Suprema de los Estados Unidos y otros tribunales estadounidenses han resuelto que una sentencia extranjera es concluyente y debe ser reconocida en los Estados Unidos si el país en donde se dictó la sentencia reconoce las sentencias dictadas en los Estados Unidos, siempre y cuando que la corte extranjera haya actuado con jurisdicción, que se hayan cumplido los requisitos fundamentales de un debido proceso de ley y que la sentencia no sea contraria al orden público local, no sea tan claramente arbitraria que sea contraria a los principios elementales de la justicia esencial y se haya dictado por un tribunal imparcial. *Ritchie* v. *McMullen,* 159 U.S. 235; *Hilton* v. *Guyot,* supra; *Direction Der Disconto-Gesellschaft* v. *U. S. Steel Corp.,* 300 Fed. 741, 747; *Strauss* v. *Conried,* 121 Fed. 199; *Cruz et al.* v. *O'Boyle,* 197 Fed. 824; *Harrison* v. *Triplex Gold Mines,* 33 F.2d 667; *164 East Seventy-Second Street Corp.* v. *Ismay,* (California) 151 P.2d 29; *Pawley* v. *Pawley,* 46 So.2d. 464, 468; 33 Mich. L. Rev. 1129; 34 Va. L. Rev. 956; *Beale,* ob. cit., Vol. 2, pág. 1364 *et seq.* De los autos no surge que la sentencia adolezca de los defectos ya mencionados y, por lo tanto, ella debe ser reconocida por nuestros tribunales. Además, la República Argentina tiene un sistema de leyes adecuado y propio de un país civilizado. Véanse 97 U. of Pa. L. Rev. 641, "Comparison of the Constitutional Basis of the United States and Argentine Political Systems" por Segundo V. Linares Quintana; Santos P. Amadeo, *Argentine Constitutional Law;* 54 Harv. L. Rev. 1395, sobre algunos aspectos

del Derecho Constitucional en Argentina; 56 Harv. L. Rev. 470, en cuanto a algunas doctrinas argentinas de Derecho Internacional Privado. Como cuestión de hecho, las leyes argentinas son muy liberales en cuanto a extranjeros, ya que se les equipara en sus derechos civiles a los ciudadanos argentinos y a las corporaciones extranjeras se les reconoce atributos de personalidad jurídica, con derecho a comparecer en las cortes, aun si no se han registrado en el país. 6 Tulane L. Rev. 567. En cuanto a la igualdad, establecida por las leyes argentinas, entre nacionales y extranjeros, véase la obra argentina de Víctor Romero del Prado, Manual de Derecho Internacional Privado, Vol. 1, pág. 212 et seq., 884 et seq. En lo relativo a corporaciones extranjeras, los requisitos argentinos son análogos a los prevalecientes en los Estados Unidos, en cuanto al hecho de hacer negocios. *Michigan Legal Studies*, "The Conflict of Laws, a Comparative Study", Vol. 2, pág. 133, nota 42, pág. 179. En cuanto a sentencias extranjeras, véase la jurisprudencia sentada por la Corte Suprema de la República Argentina, en diversos casos citados en el Manual de Derecho Internacional Privado, de Romero del Prado, Vol. 2, pág. 930 et seq., en donde se reconoce la eficacia de sentencias extranjeras dictadas con jurisdicción, sin que las cortes argentinas puedan considerar los méritos intrínsecos de la causa. En la página 921 de la misma obra se cita un dictamen de un "notable" jurista argentino, al efecto de que al disponer el Código Argentino que la obligación por sentencia sea válida, tal validez debe determinarse de acuerdo con las leyes del país donde se dictó la sentencia extranjera.

Ese liberalismo en la actitud jurídica de la República Argentina debe ser reciprocado por nuestros tribunales mediante el reconocimiento de sus sentencias a tono con las exigencias de la solidaridad internacional. La inaplicabilidad del caso de *Hilton* v. *Guyot*, supra, adquiere mayor relieve en vista de que, en dicho caso, no había estatuto alguno en-

vuelto.   En Puerto Rico prevalece el artículo 428 de nuestro Código de Enjuiciamiento Civil, que establece el principio de reconocimiento de sentencias extranjeras en la forma siguiente:

"Artículo 428.—El efecto del fallo de cualquier otro tribunal de país extranjero con jurisdicción para dictarlo, es como sigue:

"1. En el caso de un fallo contra una cosa específica, el fallo es concluyente, en cuanto al título de la cosa.

"2. En todos los demás casos el fallo constituye evidencia indirecta de un derecho entre las partes y sus sucesores en interés por título adquirido con posterioridad, y sólo puede rechazarse mediante evidencia de carencia de jurisdicción, falta de notificación a la parte, colusión, fraude o manifiesto error de hecho o de derecho." (⁵)

■■ La sentencia extranjera envuelta en el caso de autos no ha sido rechazada por evidencia dé carencia de jurisdicción o de falta de notificación a la parte.   La apelante admite que fué debidamente notificada y que compareció y actuó por medio de abogados durante todas las etapas del procedimiento.   Designó uno de los tres árbitros que determinaron la indemnización, de acuerdo con las leyes argentinas.   Cf. *Mena* v. *Llerandi*, 70 D.P.R. 176, 181, en donde se indica que habiendo los demandantes designado un perito en cumplimiento de una orden de la corte, sin protesta de su parte, no podían quejarse ni impugnar la orden en

---

(⁵) El artículo 428 corresponde al 1915 del Código de Enjuiciamiento Civil de California.   En el año 1907 ese artículo fué enmendado en California para que leyese en la siguiente forma:

"Una sentencia final de cualquier otro tribunal de un país extranjero que tenga jurisdicción para dictar sentencia, de acuerdo con las leyes de ese país, tendrá el mismo efecto que en el país donde se dictó, y también el mismo efecto que las sentencias finales dictadas en este Estado."

Es claro que esa enmienda conlleva un reconocimiento más absoluto a sentencias extranjeras que el fijado en nuestro artículo 428.   Pero aun antés de la enmienda las cortes de California habían resuelto que las sentencias extranjeras eran conclusivas, y que, con excepción de las cuestiones de jurisdicción y fraude, los méritos del caso no podían ser considerados de nuevo por las cortes domésticas.   *Banister* v. *Campbell.* 71 Pac. 504; *Weir* v. *Vail,* 65 Cal. 466.

apelación. La apelante alega, sin embargo, que el tribunal argentino actuó sin jurisdicción en virtud del artículo 4 del Código de Procedimiento Civil y Comercial argentino, el cual dispone, en parte, lo siguiente:

"Cuando se ejerciten acciones personales (será juez competente) el del lugar convenido para el cumplimiento de la obligación, y a falta de éste, a elección del demandante, el del domicilio del demandado o el del lugar del contrato, con tal que el demandado se halle en él aunque sea accidentalmente."

El propio tribunal argentino resolvió expresamente la cuestión de competencia en forma adversa a la apelante, indicando lo siguiente, según surge de los autos de este caso:

"Que en cuanto a la excepción en sí, se sostiene al oponerse a fojas doscientas veinticuatro vuelta que en el presente caso no se ha pactado lugar para el cumplimiento de la pretendida obligación exigida por el actor, por lo que, tratándose de un juicio por cobro de pesos compete exclusivamente a los jueces del domicilio del demandado.

"Que en el caso sub-lite, se trata del ejercicio de una acción personal, ya que el actor demanda el cobro de comisiones que, dice, se le adeudan así como el reembolso de gastos que detalla que dice haber realizado con motivo del negocio que se encomendara, siendo en consecuencia, de estricta aplicación, el cuarto apartado del artículo cuatro del Código de Procedimientos que expresa que 'será Juez competente . . . cuando se ejerciten acciones personales, el lugar convenido para el cumplimiento de la obligación . . .'" La Suprema Corte de Justicia de la Nación, interpretando la citada disposición legal ha expresado que el juez competente para conocer en un juicio en el que se ejercitan acciones personales, con preferencia al del domicilio del demandado, es el del lugar convenido implícita o explícitamente por las partes para el cumplimiento del contrato, cualesquiera que sean las prestaciones que se demanden, principales o accesorias (Jurisprudencia Argentina, Tomo veinticinco, página ochocientos catorce; Tomo treinta, página quinientos ochenta; Tomo treinta y uno, página sesenta y dos; Tomo cuarenta y uno, página doscientos; Tomo cuarenta y tres, página ochocientos ochenta y siete; Tomo cuarenta y cuatro, página veintiocho; Tomo sesenta y cuatro, página cuarenta y ocho) criterio éste

también sustentado por la Excma. Cámara Comercial (Jurisprudencia Argentina, Tomo cincuenta y tres, página trescientos noventa y cuatro).

"Que de las constancias de estos autos y especialmente de la carta que obra a fojas doscientos veintiocho, acompañado por los demandados, resulta que el lugar convenido implícitamente por las partes para el cumplimiento de la obligación era en esta Capital, ya que en ella debía cumplir todas sus obligaciones el actor y no podía hacer uso éste de los fondos a que se refería la carta de crédito que se le abriría, hasta que no obtuviera la certificación de que la mercadería esté a bordo, es decir, que con la producción, por parte del actor, de la documental referida en dicha carta, la que importaba la terminación del negocio, quedaba cumplida la obligación. Y no obsta a esa conclusión el hecho de que la carta de crédito se abriera sobre fondos 'en el exterior' ya que el pago se hacía en esta Capital y mediante él podía el demandante disponer de esos fondos aunque estuviesen en otro lugar. Por tanto y de acuerdo con el dictamen fiscal que antecede, resuelvo: Rechazar la excepción de incompetencia de jurisdicción opuesta a fojas doscientos veintitrés, con costas, artículo veinticuatro de la ley cuatro mil ciento veintiocho, a cuyo efecto regulo los honorarios de la dirección letrada del actor en la suma de doscientos cincuenta pesos moneda nacional y los de su apoderado en ochenta pesos de igual moneda."

La cuestión de competencia se basaba, a su vez, en la cuestión de cuál era el lugar del cumplimiento del contrato. Como hemos visto, la corte argentina resolvió que la República Argentina era tal lugar. En términos generales, si un hecho jurisdiccional ha sido litigado y resuelto por un tribunal extranjero, tal resolución es concluyente y se convierte en cosa juzgada (*res judicata*) y no puede ser litigado de nuevo en la corte doméstica, aun si la cuestión había sido planteada en el tribunal extranjero mediante una comparecencia especial. Beale, ob. cit., Vol. 2, pág. 1424 y casos allí citados; Goodrich, *Conflict of Laws*, pág. 634; *Restatement, Conflict of Laws*, sec. 451, pág. 540; *Baldwin* v. *Travelling Men's Assn.*, 283 U.S. 522; *American Surety Co.* *Baldwin*, 287 U.S. 156; *Davis* v. *Davis*, 305 U.S. 32, 40;

*Stoll* v. *Gottlieb*, 305 U.S. 165; *Treinies* v. *Sunshine Min. Co.*, 308 U.S. 66. Ello es cierto especialmente si la ausencia de jurisdicción no es completamente clara. *Restatement, Conflict of Laws*, Supp. (1948), pág. 160, sec. 451. El criterio del tribunal argentino en cuanto a la identidad del lugar del cumplimiento del contrato coincide con la regla prevaleciente en los Estados Unidos. El lugar del cumplimiento de un contrato es aquél donde la promesa ha de ser cumplida. *Restatement, Conflict of Laws*, sec. 355, pág. 434; *Beale*, ob. cit., Vol. 2, pág. 1259), o sea, el sitio donde han de realizarse los actos prometidos. *Restatement, Contracts*, Vol. 1, pág. 153, sec. 133 *b*. Ya sea considerado el contrato envuelto en el caso de autos como uno de comisión o corretaje (Cf. *Torres* v. *Arbona, Jr.*, 72 D.P.R. 769) o como uno de compraventa, el cumplimiento consistía, desde el punto de vista del demandante (corredor o vendedor), en el pago de lo adeudado a él, cuyo pago se llevaría a cabo en la República Argentina, especialmente habiéndose perfeccionado el contrato en ese sitio (Beale, ob. cit., Vol. 2, pág. 1260 y casos allí citados) o, desde el punto de vista de la demandada, el cumplimiento por el demandante consistía en el embarque del tasajo, cuyo embarque se verificaría en la República Argentina. Williston, *Contracts* Vol. 3, pág. 2342; Cf. *Fernández & Co.* v. *Huertas*, 70 D.P.R. 43; *McFaddin Rice Milling Co.* v. *Maldonado*, 31 D.P.R. 472. El embarque sería la última actuación del demandante, ya sea como vendedor o como comisionista. Aun asumiendo que esté envuelto un contrato de compraventa, el artículo 1389 de nuestro Código Civil dispone que, en ausencia de pacto sobre el tiempo y lugar en que ha de hacerse el pago del precio, éste deberá verificarse en el tiempo y lugar en que se haga la entrega de la cosa vendida. Generalmente, y en ausencia de convenio, el lugar de la entrega será en el que exista la cosa en el momento de constituirse la obligación. L. Benito, *Derecho Mercantil*, Vol. 2, pág. 300; artículo 1125 de nuestro Código Civil; Sentencia

del Tribunal Supremo de 20 de septiembre de 1900, en que se enviaron las mercancías por ferrocarril. Ya se ha determinado por la jurisprudencia en España que el juez competente para entender en una acción referente a un contrato de compraventa es el del domicilio del vendedor ya que la cosa debe ser considerada como entregada desde el momento en que el vendedor la factura y remite a disposición del comprador y por cuenta de éste. 10 Manresa 285, 286, 5ta. ed., y véanse los casos ahí citados sosteniendo esa tesis.

Llegamos, por lo tanto, a la conclusión de que el pronunciamiento del tribunal argentino en cuanto a su competencia debe ser sostenido. Habiendo resuelto que la demanda aduce hechos suficientes para constituir una causa de acción, forzoso es concluir que no se cometió el primer error señalado.

■ Bajo el segundo error señalado se alega que el tribunal actuó incorrectamente al dictar una resolución declarando sin lugar, de plano, la moción de la apelante interesando que se dejase sin efecto la sentencia y se abriese el caso de nuevo a los fines de que la apelante pudiese presentar una certificación relativa a la totalidad de la prueba que se había presentado ante el tribunal argentino. Como veremos más adelante, esa resolución, siendo una providencia especial dictada después de sentencia, era apelable bajo las disposiciones del artículo 295 de nuestro Código de Enjuiciamiento Civil. No obstante ello, la demandada no apeló de esa resolución y se limitó a apelar de la sentencia. En una apelación contra una sentencia, este Tribunal carece de jurisdicción para considerar una resolución dictada después de sentencia que de por sí sea apelable y no ha sido objeto de apelación.(6) Veamos.

(6) Las cuestiones de jurisdicción en apelación, por ser privilegiadas, deben ser resueltas con preferencia y de carecer un tribunal de jurisdicción lo único que puede hacer es así declararlo. *Autoridad Sobre Hogares* v. *Sagastivelza,* 71 D.P.R. 436, 439; *Molina* v. *Rodríguez,* 63 D.P.R. 477, 482; *Pérez* v. *Tribunal de Distrito,* 70 D.P.R. 656; *López* v. *Pérez,* 68 D.P.R. 312, 315. Para que este Tribunal adquiera jurisdicción de las apelaciones interpuestas ante él, es indispensable que los apelantes cum-

250

El ya citado artículo 295 dispone que podrá establecerse apelación para ante el Tribunal Supremo de una providencia especial dictada después de una sentencia definitiva. Generalmente, una orden o resolución denegatoria de una moción para que se deje sin efecto una sentencia no es apelable. *Estate of Baker*, 170 Cal. 578; *Reynolds* v. *Reynolds*, 191 Cal. 435; *Pacific States Savings Etc. Co.* v. *Harwell*, 204 Cal. 370; *Bixby* v. *California Trust Co.*, 33 Cal.2d. 495; *Gossman* v. *Gossman*, 168 P.2d. 495. Pero ello es así cuando la moción se refiere a las mismas cuestiones y hechos envueltos en y resueltos por la sentencia, y si se refiere a los mismos fundamentos, cuestiones y hechos que pueden ser dilucidados y resueltos en una apelación contra la sentencia en sí. *Litvinuk* v. *Litvinuk*, 27 Cal.2d. 38; *Kellow* v. *Lane*, 228 P.2d. 872; *Colbert* v. *Colbert*, 28 Cal.2d. 276. Si la moción se limita a solicitar de la corte el que deje sin efecto o modifique su sentencia a base de los mismos hechos sometidos a la corte antes de dictar sentencia, la resolución denegatoria no es apelable, *Oppenheimer* v. *City of Los Angeles*, 232 P.2d. 26, ya que los alegados errores que le sirven de base a la. apelación pueden ser considerados en una apelación contra la sentencia (*Reay* v. *Butler*, 69 Cal. 572; *Postal Telegraph-Cable Co.* v. *Superior Court*, 136 P. 538) y el propósito debe ser el de evitar una duplicación de apelaciones contra la misma sentencia y por los mismos fundamentos, prolongándose el litigio indebidamente. *Reynolds* v. *Reynolds*, supra. Esas son las razones por las cuales no es apelable una moción de reconsideración que se refiera a extremos comprendidos en la sentencia y que pueden considerarse en una apelación contra la sentencia. *Sierra, Comisionado* v. *Blondet*, 70

plan estrictamente con las disposiciones generales de las leyes que las reglamentan. *González* v. *Jiménez*, 70 D.P.R. 165. La apelación es estatutaria y debe determinarse por el estatuto. *Vázquez* v. *Rivera*, 69 D.P.R. 947; *Sampedro* v. *Fournier*, 69 D.P.R. 584; *Del Valle, Ex parte; Sánchez, Etc., Opositores*, 69 D.P.R. 663. Determinado resultado puede ser severo, pero no podemos eludir las disposiciones de la ley. *Guilhon & Barthelemy* v. *Corte*, 64 D.P.R. 303, 310.

D.P.R. 214; *Gual* v. *Tribunal de Distrito*, 71 D.P.R. 305; *Castro* v. *Rexach Racing & Sporting Corp.*, 60 D.P.R. 301; *Guilhon & Barthelemy* v. *Corte*, 64 D.P.R. 303; *Marrero* v. *Olmeda*, 69 D.P.R. 217.

Sin embargo, si la moción para que se deje sin efecto una sentencia se refiere a cuestiones que no pueden ser consideradas en una apelación contra la sentencia o se basa en hechos nuevos y distintos que no fueron considerados por la corte al dictar sentencia y no aparecen en el récord que le sirvió de base a la sentencia, y si la moción plantea cuestiones o extremos que no podían estar comprendidos en la sentencia, entonces es apelable la orden o resolución declarando sin lugar tal moción, ya que no se trata de una duplicación de las mismas cuestiones. *Valentin* v. *Valentin*, (Cal.) 209 P.2d. 654; *Kent* v. *Williams*, 146 Cal. 3; *De la Montanya* v. *De la Montanya*, 112 Cal. 101; *Pignaz* v. *Burnett*, 119 Cal. 157; *In re Yoder*, 199 Cal. 699; *Hall* v. *Imperial Water Co.*, 200 Cal. 77; *Helbush* v. *Superior Court*, 278 Pac. 1062; *Johnson* v. *Sun Realty Co.*, 32 P.2d. 393.

En el caso de autos, se declaró con lugar la demanda debido a que la prueba presentada por la demandada era insuficiente para demostrar la comisión de un error manifiesto de hecho o de derecho por el tribunal argentino, bajo el artículo 428 del Código de Enjuiciamiento Civil, ya que la demandada no presentó la totalidad de la prueba considerada por la corte argentina. En su moción de reconsideración y relevo de la sentencia, la demandada admitió que la sentencia era correcta en cuanto a ese extremo y solicitó que se le concediese la oportunidad de presentar la totalidad de la prueba que estaba en su poder, aduciendo razones y ofreciendo prueba tendente a justificar y excusar su omisión de presentar esa prueba anteriormente. Los hechos y cuestiones envueltos en la moción eran distintos a los hechos y cuestiones que motivaron la sentencia. El punto a resolver en torno a la moción se refería al ejercicio de su discreción

por el tribunal sentenciador en cuanto a si tal omisión de presentar prueba anteriormente era o no excusable, a los fines de abrir el caso de nuevo para recibir la nueva prueba. Esa cuestión era independiente de las que le sirvieron de base a la sentencia. Si la corte sentenciadora abusó o no de su discreción al declarar sin lugar la moción no es cuestión que pueda ser considerada en una apelación contra la sentencia en sí, ya que los hechos y factores que determinan una decisión en cuanto a la moción no surgen de, ni están comprendidos en, la sentencia ni en la prueba y los procedimientos que dieron lugar a la sentencia. La admitida insuficiencia de la prueba es cuestión distinta a las razones por las cuales no se presentó la prueba necesaria. La moción no se basa en los mismos hechos sometidos a la corte antes de dictar sentencia, y el alegado error en cuanto a abuso de discreción no guarda relación con los méritos de la sentencia en sí. Por lo tanto, la resolución denegatoria de la moción es apelable. *Garzot* v. *Garzot, Etc.*, 49 D.P.R. 350; *Hastings* v. *Ganaderos Unidos de P. R., Inc.*, 46 D.P.R. 385; *Hernáiz, Targa & Co.*, v. *Vivas*, 20 D.P.R. 106; *Sellés* v. *Rodríguez*, 57 D.P.R. 9.

Se alega por la apelante que su moción es una de reconsideración. El nombre o la rúbrica que se le da a una moción no es determinante de la naturaleza intrínseca de la moción, desde el punto de vista de la realidad y de la justicia sustancial. Cf. *Klapprott* v. *United States*, 335 U.S. 601, 614, 615; *Pueblo* v. *Gerena*, 72 D.P.R. 222, 225. Generalmente, una moción de reconsideración se refiere a cuestiones resueltas por la sentencia o a cuestiones planteadas en el litigio que podían haber sido objeto de la sentencia o a hechos sometidos a la corte antes de dictarse sentencia. Ésa no es la naturaleza de la moción que nos ocupa.

La moción llamada "de reconsideración y de relevo" de sentencia participa más bien de la naturaleza de un auto de *"coram nobis"*. Cf. *Pueblo* v. *Soto*, 72 D.P.R. 412, 414;

*Pueblo* v. *Gerena,* supra. El auto de *coram nobis* se basa en errores de hecho que no surgen de los autos, en cuanto a hechos que existían antes de dictarse sentencia, que podían haber afectado la sentencia si la corte hubiera conocido la totalidad de los hechos, los cuales no fueron sometidos a la corte sin haber mediado culpa ni negligencia de parte del actor o debido a una equivocación excusable de su parte. *Pueblo* v. *Nazario,* 53 D.P.R. 239; *People* v. *Reid,* (Cal.) 232 P. 457, 459; *People* v. *Gilbert,* 25 Cal.2d. 422; 31 *Am. Jur.* 323, et seq; monografía en 58 A.L.R. 1286; Moore's *Federal Practice,* Vol. 3, pág. 3256, ed. 1938; *People* v. *Union Trust Bank,* 95 N.E.2d. 532; *Loew* v. *Krauspe,* 150 N.E. 683. Véase además Orfield, "Writ of Error Coram Nobis", 20 Va. L. Rev. 423. El auto es análogo a una moción para dejar sin efecto la sentencia (*People* v. *Vernon,* (Cal.) 49 P.2d. 326, 327) y su procedencia está implícitamente autorizada por la Regla 60 (*b*) de nuestras Reglas de Enjuiciamiento Civil. "Federal Relief From Civil Judgments", 55 Yale Law Journal, 623, 634; *Preveden* v. *Hahn,* 36 F. Supp. 952; *Cavallo* v. *Agwilines, Inc.,* 6 Fed. Rules Serv. 60*b*.31; *McGinn* v. *United States,* 6 Fed. *Rules Serv.* 60*b*.51, Case 3; 4 Fed. Rules Serv. 942, "Effect of Rule 60*b* on other Methods of Relief from Judgments"; *Fraser* v. *Doing,* 130 F.2d 617; *Fiske* v. *Buder,* 125 F.2d. 841; 3 Moore's *Federal Practice* 3273, ed. 1938.

Ahora bien, una resolución en torno a una petición de un auto de *coram nobis* constituye una providencia especial dictada después de sentencia y es apelable. *In re Paiva,* 31 Cal.2d. 503, 504; *People* v. *Gilbert,* supra, *Frank* v. *Salomon,* 34 N.E.2d. 424; *Audsley* v. *Hale et al,* 261 S.W. 117; *People* v. *Union Trust Bank,* supra; 20 Va. L. Rev. 423, 437.

Siendo apelable la resolución denegatoria de la moción de "reconsideración y relevo" de sentencia, y no habiéndose apelado de ella, este Tribunal carece de jurisdic-

ción para revisar tal resolución, en una apelación contra la sentencia. *McCourtney* v. *Fortune*, 42 Cal. 387; *Jenness* v. *Bowen*, 77 Cal. 310; *Swanston* v. *Clark*, 153 Cal. 300; *Boos* v. *Byrness*, 166 P. 596; *Wells Fargo Bank & Union Trust Co.* v. *Broad*, 39 P.2d 241; 5 C.J.S. 147, sec. 1493.

Nuestra negativa a revisar la resolución denegatoria de la moción de la apelante no envuelve un resultado severo e injusto a la apelante. Es culpa de la demandada el no haber apelado de tal resolución. Cf. *Ackermann* v. *United States*, 340 U.S. 193, 198. Además, al disponer el artículo 428 de nuestro Código de Enjuiciamiento Civil que una sentencia extranjera podrá ser rechazada mediante evidencia de la comisión de un error manifiesto de hecho o de derecho, tal cuestión debe ser resuelta a la luz de las disposiciones contenidas en las leyes argentinas, especialmente las disposiciones sustantivas prevalecientes en la República Argentina en cuanto a los contratos de comisión o corretaje y de compraventa, siempre y cuando que tales disposiciones no sean contrarias al orden público en esta jurisdicción. Ello es una consecuencia del reconocimiento que le damos a la sentencia argentina y es un efecto de la aplicación del principio de cortesía internacional. Además, desde el punto de vista del Derecho Internacional Privado, existe un conflicto en las autoridades en cuanto a si la naturaleza, validez y efecto de un contrato deben determinarse a la luz de las leyes prevalecientes en el sitio donde se perfecciona el contrato mediante la expresión del consentimiento mutuo (*lex loci celebrationis*) (⁷) o en el sitio donde se ha de cumplir o ejecutar el contrato (*lex loci executionis*). Sobre este conflicto, véase Williston, *on Contracts*, Vol. 6. sec. 1792, pág. 5095 et seq., edición revisada; Romero del Prado, Derecho Internacional Privado, Vol. 2, pág. 343. Desde cualquiera de los dos puntos de vista, la ley argentina es determinante,

---

(⁷) Este el criterio adoptado por el *Restatement, Conflict of Laws*, en la sección 232.

ya que el contrato se perfeccionó en la República Argentina, al verificarse la aceptación por el demandante (Romero del Prado, ob. cit., Vol. 2, pág. 334; Corbin, *Contracts*, Vol. 1, pág. 245, 255, sec. 78 y 81; *Restatement, Contracts*, Vol. 1, sec. 67), y, como ya hemos visto, ese país fué también el sitio del cumplimiento o ejecución del contrato.

La demandada apelante nunca ha hecho esfuerzos de clase alguna por presentar en evidencia las leyes argentinas ya mencionadas, ni aun en su moción de "reconsideración y relevo de sentencia", y, por lo tanto, este litigio debe ser ya considerado como terminado definitivamente. Además, es de aplicación el caso resuelto por la Corte Suprema de los Estados Unidos de *Ingenohl* v. *Olsen & Co.*, 273 U.S. 541, opinión del Juez Holmes, en donde se revoca una sentencia de la Corte Suprema de las Islas Filipinas, cuya última corte resolvió, bajo una disposición legal idéntica a nuestro artículo 428, ya citado, que un tribunal de Hong Kong había incurrido en un error manifiesto de hecho y de derecho al dictar una sentencia. Dijo la Corte Suprema de los Estados Unidos que el caso debería ser resuelto a base de la ley prevaleciente en Hong Kong, tal como fué interpretada por la corte de Hong Kong, y la decisión de tal corte no debía ser considerada como incorrecta. Se indica que la disposición legal ya mencionada (nuestro artículo 428) no debía ser interpretada en el sentido de negarle efectividad a la sentencia de Hong Kong, en vista de cuestiones "delicadas de relaciones internacionales".

Bajo el tercer error señalado la apelante impugna el dictamen del tribunal a quo al condenar a la demandada-apelante a pagar la cantidad de $3,000 en concepto de honorarios de abogados del demandante-apelado. Después de haber considerado detenidamente todas las circunstancias y factores envueltos en este caso llegamos a la conclusión de que el tribunal sentenciador actuó correctamente en cuanto al pronunciamiento relativo a los honorarios de abogado del

demandante-apelado y, por lo tanto, ese dictamen debe ser ratificado.

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández concurre con el resultado.

