MARIANO ARROYO MERINO y OTROS, peticionarios, *v.* JUNTA AZUCARERA DE P.R., demandada; C. BREWER P.R., INC., interventora; ASOCIACIÓN PRODUCTORES DE AZÚCAR, *amicus curiae.*

*Número:* JA-62-1     *Resuelto:* 18 de diciembre de 1963

624

*Juan Nevárez Santiago,* abogado de los peticionarios; *Lydia F. Marcos,* abogada de la demandada; *McConnell, Valdés & Kelley,* y *Pablo R. Cancio,* abogados de la interventora; *Fiddler, González & Rodríguez,* y *Rafael R. Vizcarrondo,* abogados del *amicus curiae.*

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

La cuestión a resolver en este caso es si los peticionarios, Mariano Arroyo Merino y otros, que entregan sus cañas a la interventora, C. Brewer P.R., Inc., en determinados sitios designados por ésta, utilizan para ello sus propias grúas y sufragan el costo de trasbordar las cañas de sus vehículos al ferrocarril de la interventora, tienen o no el derecho a que ésta les reembolse el costo del servicio de grúa y personal, no obstante estar dichos sitios designados dentro de sus respectivas fincas o a menos de medio kilómetro de la salida normal o natural de las mismas, cuando a otros agricultores que también entregan sus cañas a la interventora en los referidos sitios designados, se les paga tal compensación por el hecho de no estar dichos sitios designados dentro de sus fincas, y por el contrario, estar a medio kilómetro o más de la salida normal o natural de éstas.

Los peticionarios, Mariano Arroyo Merino y otros, agricultores productores de caña de azúcar, entregan las cañas para su molienda a la interventora C. Brewer P.R., Inc. (y

por lo tanto son colonos de ésta) en sitios designados por dicha empresa a donde los peticionarios llevan el producto en su propio equipo directamente desde los lugares o "bancos" donde se corta la caña en sus fincas. Los peticionarios no realizaban trasbordo alguno de sus cañas mediante el uso de grúa antes de conducirlas a los sitios designados que están localizados dentro de las fincas de los peticionarios o a menos de medio kilómetro de la salida normal o natural de cada finca. El lugar designado pertenece a cada peticionario, excepto en tres casos en que los sitios pertenecen a la interventora. Además, ésta posee las vías de su ferrocarril que mediante las correspondientes servidumbres de paso llegan hasta los sitios designados en donde los peticionarios han instalado grúas propias que utilizan para trasbordar sus cañas al ferrocarril. Desde el 1952 los peticionarios han operado dichas grúas por su exclusiva cuenta y a su costo sin recibir reembolso alguno por tal concepto. La interventora les ha pagado 7 1/2¢ por tonelada de caña por concepto de arrimo en los casos en que ha recibido la caña en la misma finca, y 15¢ cuando la ha recibido en un sitio a menos de medio kilómetro de la finca. A otros colonos que han entregado sus cañas en algunos de tales sitios designados, la interventora les ha reembolsado el costo de grúa y personal y éstos a su vez han pagado al dueño de la grúa por tal servicio. De acuerdo con la prueba aducida, ningún colono particular ha entregado caña a la interventora en las grúas de los peticionarios Nicolás García, Jesús M. Rodríguez, Valentín Villafañe, Abad Rivera, Antonio Fuentes, Sucesión McConnie, Otto Irizarry Sambolín, Salvador Morales, Alberto Fuentes y Pedro M. Calderón. A los peticionarios Abad Rivera y Miguel A. Cruz se les compensó por el llenado en la grúa de la interventora en el punto de entrega de caña designado por ésta.

La Junta Azucarera declaró sin lugar la querella solicitando que se ordenase a la interventora a pagarle a los peticionarios la cantidad de 29¢ por tonelada de caña entre-

gada por éstos a la interventora en la forma antes descrita. Esta cantidad constituye el costo de los servicios de grúa y personal de que los peticionarios tuvieron que proveerse en los sitios designados por la interventora para recibir las cañas de los peticionarios y de los otros colonos. También se rechazó la petición para que en lo sucesivo la interventora les provea gratuitamente tales servicios. Luego de solicitar la reconsideración que les fué denegada, los peticionarios radicaron el presente recurso de revisión apuntando la comisión por la Junta de los siguientes siete errores:

"1. La resolución impugnada es contraria al artículo 6 de la ley número 426 de mayo del 1951, enmendada, que dispone servicio de grúa gratis para todos los colonos de la central.

"2. La referida resolución es nula porque la recurrida erró al aplicar el derecho a los hechos de la querella.

"3. La resolución de la Junta, de prevalecer constituye discrimen y niega la igual protección de la ley a los recurrentes, y hace además que la Ley Azucarera carezca de uniformidad en su aplicación.

"4. La resolución impugnada es arbitraria e irrazonable, y la Junta asume poderes que le han sido negados por el estatuto.

"5. La resolución de la Junta constituye una interpretación forzada a favor de la central, contraria al espíritu de liberalidad que en su interpretación debe dicho estatuto tener en favor de los colonos.

"6. La Junta le ha dado al mencionado caso de Colonos de Santa Juana v. Junta Azucarera, supra, un alcance que no tiene y una interpretación contraria a lo resuelto en dicho caso.

"7. La resolución impugnada priva a los recurrentes de derechos de propiedad sin debido procedimiento de ley, y es contraria en este respecto a la Constitución del Estado Libre Asociado de Puerto Rico y a la Constitución de los Estados Unidos de América, que en este particular rige en Puerto Rico."

Por estar íntimamente relacionados entre sí, discutiremos estos errores conjuntamente. En el estudio de la cuestión en-

628

vuelta en este caso, debemos considerar lo dispuesto por el Art. 6(a) de la Ley Núm. 426 de 13 de mayo de 1951 (5 L.P.R.A. sec. 375(a)),(¹) el alcance de nuestros dictámenes en *Colonos de Santa Juana* v. *Junta Azucarera*, 77 D.P.R. 392 (1954), e *Eastern Sugar Associates* v. *Junta Azucarera*, 77 D.P.R. 358 (1954), confirmados en 235 F.2d 347 (1st Cir. 1955), y la procedencia y validez del Art. 1 de la Regla Núm. 7(²) de la Junta Azucarera de Puerto Rico, efectiva

---

(¹)El Art. 6(a) de la referida Ley Núm. 426 que es la Ley Azucarera de Puerto Rico, dispone lo siguiente:

"Para el arrastre y arrimo de las cañas de los colonos, regirán las siguientes cláusulas y condiciones:

(a) La central podrá proveer los medios de transportación para las cañas de sus colonos desde la finca del colono hasta la central, y cuando así los provea, compensará al colono con siete y medio (7½) centavos por tonelada de caña entregada, por concepto de arrimo; *Disponiéndose*, que si durante la zafra de 1950 alguna central hubiese pagado una suma superior por este concepto, este último será el tipo que regirá para dicha central. En caso de que la central no provea los referidos medios de transportación, vendrá obligada a compensar al colono en la forma y medida más adelante establecida, por la transportación de dichas cañas desde la finca del colono hasta el sitio de entrega designado por la central, ya bien dicha transportación se efectúe con equipo propio del colono o arrendado por él. *La central estará obligada a proveer a todos sus colonos, sin costo alguno para éstos, servicio de grúa y el personal necesario para su operación en cada sitio que la central designe para la entrega de cañas.* Cuando se trate de un colono nuevo o uno que desee cambiar de sitio de entrega de las cañas y la central y el colono no se pongan de acuerdo en cuanto al sitio de entrega, la Junta determinará el sitio en que la central deberá recibir las cañas del colono, de entre los designados por la central." (Énfasis nuestro.)

(²)El Art. 1 de la Regla Núm. 7 dispone lo siguiente:

"La central estará obligada a proveer a todos sus colonos sin costo alguno para éstos servicio de grúa y el personal necesario para su operación cuando la distancia desde la salida normal o natural de la finca hasta el sitio de entrega designado por la central sea de medio kilómetro o más."

Según el preámbulo de la referida Regla Núm. 7, se celebró una vista ante la Junta Azucarera para discutir la reglamentación de los servicios de grúa a ser provistos por las centrales a sus colonos, o en su defecto la negociación de convenir sobre reembolsar por aquéllas a éstos por el servicio de grúa y personal, y en dichas vistas los colonos y representantes que declararon manifestaron estar de acuerdo con la aprobación del proyecto de la Regla Núm. 7.

desde el 13 de junio de 1957 (5 R.&R.P.R. sec. 391–91).

Sostienen los peticionarios que al transportar sus cañas hasta la grúa en el sitio intermedio designado por la interventora, tienen derecho a que se les reembolse por el costo de trasborde en dicho sitio de acuerdo con *Eastern Sugar Associates*, supra, en que resolvimos que no obstante indican el molino como sitio de entrega de las cañas de los colonos a la central, si ésta de hecho las recibe en otro que en efecto es un sitio intermedio, la central debe proveer allí un servicio gratuito de grúa y personal. Arguyen los peticionarios que la situación en este caso es distinta y no está cubierta por lo dispuesto en *Colonos de Santa Juana*, supra, pues no se estaba exigiendo en ese caso que la central fijase sitios de entrega con derecho a grúa y personal gratis en las propias fincas de los recurrentes, ni se trataba de determinar si las fincas de los recurrentes o los puntos adyacentes a las mismas dentro del radio de medio kilómetro de su entrada constituyen o no sitios de entrega. En este caso el sitio de entrega ha sido fijado por la central para todos los colonos de determinado sector. Lo que ocurre es que este sitio designado por la central está dentro de las fincas de los recurrentes o a menos de medio kilómetro desde la salida normal o natural de dichas fincas.

La Junta, por el contrario, dictaminó que en este caso, y en lo que se refiere a los peticionarios, la central está recogiendo las cañas dentro de sus fincas o sitios adyacentes a las mismas y por lo tanto, de acuerdo con *Colonos de Santa Juana*, no viene obligada a darle servicio gratuito de grúa.

■ Al resolver las distintas cuestiones planteadas en este caso es necesario señalar ciertas reglas de interpretación que hemos adoptado en relación con controversias de esta naturaleza. En *Antonio Roig, Sucrs.* v. *Junta Azucarera*, 77 D.P.R. 342 (1954), dijimos que: "El Art. 6(c) debe leerse en el contexto de la Ley núm. 426 [la Ley Azucarera] como una unidad y teniendo en cuenta las circunstancias antes expuestas con respecto a la industria azucarera en Puerto

Rico." No vemos razón por la cual esta regla no deba igualmente aplicarse a cualquier otro aspecto de dicho Art. 6. En dicho caso también dijimos que "Una sección de un estatuto no se lee aisladamente sino junta con otras secciones de la ley con el fin de determinar su verdadero significado y propósito." En *South P.R. Sugar Co.* v. *Junta,* 82 D.P.R. 847 (1961), a la pág. 864, señalamos que "Es norma reiterada de este Tribunal la de merecerle gran consideración y respeto las conclusiones e interpretaciones de los organismos administrativos especializados" y en *South Puerto Rico Sugar Co.* v. *Junta Azucarera,* 83 D.P.R. 406 (1961), y en *Colonos de Santa Juana,* supra, aplicamos este principio específicamente a las conclusiones de la Junta Azucarera. En *Central Monserrate, Inc.* v. *Junta Azucarera,* 83 D.P.R. 109 (1961), a la pág. 115, dijimos que la ausencia de definición de ciertos términos en la Ley Azucarera y de los poderes que se le otorgaron a la Junta, "responden sin duda, al deseo legislativo de delegar en ese organismo la razonable reglamentación del asunto y de confiar, por tanto, a la discreción administrativa determinaciones que requieren la diaria atención a diversos factores económicos y de organización industrial."

■ 1–2. A los fines de un mejor entendimiento del proceso de arrimo y arrastre de cañas de los colonos de una central y la compensación que ésta debe pagarles por ambas operaciones, indica la Junta en su memorándum que los términos en cuestión envuelven las siguientes cinco operaciones:

"1. Llenado de los vehículos en los 'bancos' de corte.
2. Acercamiento de la caña en esos vehículos hasta un punto de concentración.
3. Elevación o trasbordo desde esos vehículos a los vehículos que han de transportarla al molino.
4. Transportación o arrastre hasta el molino o hasta un sitio intermedio entre el punto de concentración y al molino.
5. Trasborde en el sitio intermedio o descarga en el molino."

Explica la Junta que:

"Las tres primeras operaciones las hace el colono a su costo, la Central lo compensa por 'arrimo'.

"La cuarta operación de transportación la provee la Central y cuando no la provee compensa al colono con 5¢ por tonelada kilómetro recorrido. Cuando el colono hace esa transportación la Central lo compensa por 'arrastre'. Dicha compensación se calcula desde ½ kilómetro de la salida de la finca hasta la Central. Así es que en esas circunstancias 'arrimo' es también la distancia que se recorre dentro de la finca y hasta ½ kilómetro de ésta. La Central entonces compensa al colono con 15¢ por tonelada de caña que entregue en lugar de solamente 7½¢ puesto que el 'arrimo' entonces consta de más operaciones y resulta más costoso para el colono.

"Para cubrir la quinta operación la Central provee servicio de grúa gratis en ambos sitios, es decir en el punto intermedio hacia el molino, y en el propio molino. Si la Central no provee ella misma el servicio de grúa en los sitios intermedios entonces compensa al colono por haberlo efectuado él a su costo.

"El Artículo 6 inciso (b) expone el significado del término 'arrastre' según se usa en la industria azucarera para los fines de compensación. 'Arrastre' para esos fines quiere decir transportación desde la finca al sitio de entrega, siempre y cuando la distancia a recorrer desde la finca del sitio de entrega sea de medio kilómetro o más. Repetimos, no hay compensación por arrastre por recorrido dentro de la finca o hasta un sitio menor de medio kilómetro de la finca porque ese recorrido está considerado como una operación dentro del acto de arrimar las cañas y compensado como tal como hemos explicado.

"Es costumbre, que ha confundido a los Recurrentes, el incorporar la compensación por arrimo de 15¢ a la tarifa de arrastre y considerar el total como compensación por arrastre.

"La necesaria elevación o trasbordo de las cañas para poderse iniciar su transporte al molino es bien conocida entre los que bregan en la industria azucarera como 'primera leva'.

"Consiste el trasbordo en vaciar los vehículos llenos arrimados al punto de concentración elevando la caña a otro vehículo que la conducirá al molino. La caña atada en mazos con ayuda de cadenas eslingas es izada en paquetes con la ayuda de una grúa cuyo brazo movedizo deposita el paquete en el otro vehículo.

Los primeros vehículos regresan vacíos a la pieza de caña para que se vuelvan a llenar y los segundos vehículos conducen la caña al molino donde son vaciados después de pesados, con la ayuda de otra grúa. Cuando en lugar de llevarla directamente al molino el colono transporta o arrastra su caña hasta solamente un punto intermedio, se hace necesario en ese punto una 'segunda leva'. Es esta 'segunda leva', entre la 'primera leva' y la descarga de la caña en la Central, la que da derecho a servicio de grúa independientemente de la cantidad que reciba el colono por concepto de arrimo puesto que ese segundo trasborde no está incluido en las operaciones usuales de arrimo. Es este segundo trasbordo el que trata la ley como si la caña se entregara en el propio molino donde no tiene que incurrir el colono en gastos de grúa."

Históricamente la central ha compensado al colono por el arrimo de cañas. Las cañas eran transportadas desde el sitio donde se arrimaban hasta el molino o hasta un punto intermedio. Las centrales siempre han operado sus propias grúas en los molinos y por tanto cuando el colono transportaba sus cañas hasta el molino allí recibía servicio gratuito de estas grúas. Cuando la transportaba hasta un sitio intermedio se hacía necesario la instalación y operación de una segunda grúa, y, por lo tanto, había que determinar quién habría de instalar y operar esa grúa extra. Nos parece que la Asamblea Legislativa, en su deseo de igualar los servicios de entrega de todos los colonos y considerando que cuando sus cañas se entregaban directamente a la central no tenían que pagar los servicios de grúa, resolvió que las centrales costeasen dicho servicio de grúa en el sitio intermedio y así lo dispuso en la última parte del inciso (a) del referido Art. 6. En *Colonos de Santa Juana*, supra, se alegaba que los desvíos o plazas de transbordo situadas en fincas de los colonos o en lugares adyacentes, donde las cañas pasaban de los colonos a la central, eran "sitios de entrega" de la central para la entrega de cañas, y, por lo tanto, los colonos tenían derecho a que se les suministrase allí servicio de grúa y personal por la central libre de costo para ellos. Sostuvimos una

orden de la Junta Azucarera de Puerto Rico resolviendo que cuando el dueño y operador de una central toma posesión física de la caña de los colonos *dentro de las fincas de éstos o en sitios adyacentes* a las mismas, la central no viene obligada bajo el Art. 6 de la Ley Azucarera de Puerto Rico, *supra*, a suministrar servicio gratuito de grúa. Dijimos en este caso que:

"Si un colono lleva sus cañas a un punto intermedio, es necesario no solamente cargarla en la finca sino también transbordarla en el punto intermedio para ser llevada por la central al molino. Y es el servicio de grúa en relación con el transbordo en el punto intermedio lo que el art. 6 exige a las centrales que suministren gratis a los colonos. Pero, como resolvió la Junta, al así proveerlo la Asamblea Legislativa no tuvo por miras que su lenguaje cubriera la carga de la caña en la finca del colono o en los sitios adyacentes a ésta. Fue sólo para el transbordo en el punto intermedio—y la descarga en la central que se incluyó por mera precaución, ya que las centrales indudablemente continuarían este servicio sin costo alguno para los colonos—que la Asamblea Legislativa quiso asegurarle a los colonos el servicio de grúa gratis. A la luz de lo anteriormente expuesto, concluímos que el servicio de grúa gratis se requiere solamente cuando el 'punto de entrega' es un sitio al cual el propio colono transporta su caña por toda o parte de la ruta al molino. Por consiguiente la Junta no cometió error al negarse a exigirle a la central en este caso que suministrara servicio de grúa gratis a aquellos colonos cuyas cañas son recibidas por la central dentro de las fincas de los colonos o en sitios adyacentes a éstas."

Y añadimos que si bien es cierto que "el art. 6(a) dispone que el servicio de grúa gratis sea suministrado a *todos* los colonos . . . en cada sitio que la central designe para entrega de cañas, . . . la palabra *todos* en este contexto significa todos los colonos que entregan sus cañas en puntos intermedios . . ."

Dijimos, además, en *Colonos de Santa Juana*, supra, que:

"Aquí la Junta rechazó la contención de los peticionarios de que bajo el art. 6 las centrales deben suministrar servicio

de grúa gratis en las fincas de los colonos y en los sitios adyacentes a éstas como '. . . completamente irrazonable, ya que se impondrían obligaciones excesivamente onerosas a los querellados.' Si bien en análisis final debemos ejercitar nuestro criterio independiente sobre cuestiones de derecho que surgen bajo la Ley núm. 426, las conclusiones de la Junta Azucarera '. . . como una agencia especializada, tratando a diario exclusivamente con estos problemas . . . merecen gran consideración y respeto.' "

■ Al designar la interventora determinados sitios para entrega de caña dentro de las fincas de los peticionarios o a menos de medio kilómetro de la salida normal o natural de esas fincas, estaba determinando en efecto que ella iba a realizar la transportación de la caña de los peticionarios de acuerdo con la primera parte del Art. 6(a) de la Ley Azucarera. Es sólo cuando el colono y no la central, efectúa la transportación de sus cañas, es decir, cuando el colono lleva su equipo cargado de cañas en los "bancos" de corte a un punto de concentración en su propia finca o en lugar adyacente a ésta, transborda allí la caña a los vehículos que habrán de conducirla a la central (primera leva mediante uso de grúa) y la transporta o arrasta hasta el molino, o al sitio designado por la central donde ella ha de recibir la caña, que surge la obligación de la central de (1) pagar 15¢ por tonelada por concepto de arrimo, y 5¢ por tonelada por kilómetro desde la finca al sitio de entrega siempre que la distancia sea de medio kilómetro o más y de (2) suministrar grúa y personal gratis en el referido sitio designado o reembolsar por este servicio si el colono es quien suministra el servicio.

■ El hecho que la central haya designado un punto dentro de las fincas de los peticionarios o a menos de medio kilómetro de la salida normal o natural de las mismas como sitio de entrega de las cañas de los peticionarios y otros colonos, no quiere decir necesariamente que, en cuanto a los dueños de tales fincas, el punto en cuestión es el punto intermedio designado por la central como sitio de entrega de caña

(y que por lo tanto impone a ésta la obligación de suplir gratis o compensar por el servicio de grúa y personal en dicho sitio) como en efecto lo puede ser para otros colonos. Ya en *Eastern Sugar Associates,* supra, resolvimos que el referido sitio designado para la entrega de caña no es el que la central le notifique como tal a sus colonos sino aquél que esté en un punto intermedio entre la central y la finca del colono a donde el colono transporta su caña y donde la central en efecto recibe y toma posesión de la caña. De manera, pues, que en el caso que nos ocupa, la notificación de la interventora a los peticionarios de que determinados sitios en sus fincas o adyacentes a éstas se designaban como punto intermedio de entrega de caña, no era ni podía ser de por sí la determinación final sobre la cuestión. En otras palabras, la central no puede por su sola notificación afectar los derechos de los colonos en cuanto a la designación del sitio para la entrega de caña. La cuestión de si tal designación mediante notificación es una designación real y efectiva hay que determinarla considerando todas las circunstancias de la operación de entrega de la caña por el colono a la central. Por lo tanto, es evidente que un punto puede ser sitio intermedio designado para entrega de la caña de unos colonos y no así con respecto a otros en relación con los cuales las circunstancias de la operación sean distintas.

Un examen cuidadoso de los autos en *Colonos de Santa Juana,* supra, revela que en ese caso se nos planteó la misma cuestión que ahora nos ocupa bajo circunstancias operacionales idénticas a las de este caso, excepto que en éste, como en *Eastern Sugar Associates,* la central envió a sus colonos, los peticionarios inclusive, una notificación formal designando un punto en sus fincas o adyacentes a éstas como sitio intermedio de entrega de las cañas de los peticionarios y otros colonos. Como ya hemos indicado tal notificación no es final y determinante por sí. Concluimos, por lo tanto, que el Reglamento Núm. 7 de la Junta Azucarera no viola el Art. 6 de la Ley Azucarera y, por el contrario, es una aclara-

ción justificada, y al efecto una definición procedente, dentro de las facultades de dicha Junta, del término "sitios adyacentes" que usamos en *Colonos de Santa Juana*, al resolver en dicho caso que el referido Art. 6(a) "no exige a las centrales que suministren servicio de grúa gratis a los colonos cuyas cañas ellas reciben en las fincas de éstos o en *sitios adyacentes a las mismas.*" (Énfasis nuestro.)

3. La resolución de la Junta impugnada en este caso no constituye discrimen, ni niega la igual protección de las leyes ni hace que la Ley Azucarera carezca de uniformidad. Previamente hemos señalado que las distintas disposiciones del Art. 6 de la Ley Azucarera tienen por propósito igualar las condiciones de entrega de los colonos. Así es evidente que *todos* los colonos que transportan y entregan sus cañas en el molino de una central o en un punto intermedio designado al efecto por ésta, deben recibir servicio gratuito de grúa y personal en tales sitios o el reembolso de los gastos incurridos en proveerse de tales servicios; y que *todos* los colonos que entregan sus cañas a la central en sus fincas o en sitios adyacentes deben recibir compensación por concepto de arrimo, o sea 7 1/2¢ por tonelada cuando se recibe la caña dentro de la finca y 15¢ por tonelada cuando se recibe a menos de medio kilómetro de la misma. Esta compensación de 7 1/2¢ en unos casos y 15¢ en otros, incluye, como parte del gasto incurrido en el arrimo, los gastos de grúa para el transborde, o sea, la "primera leva" para iniciar la transportación de la caña al molino de la interventora.

4. La referida resolución de la Junta Azucarera no es arbitraria ni irrazonable, ni asumió la Junta poderes que le han sido negados por la Ley Azucarera. Ya en *Central Monserrate*, supra, dijimos que la Junta tiene facultad para definir términos no definidos en la Ley Azucarera y proveer razonable reglamentación y el deseo legislativo fue confiar a la discreción administrativa determinaciones que requieren la diaria atención a diversos factores económicos y de orga-

nización industrial. En el caso que nos ocupa la Junta aclaró y precisó mediante definición los términos "todos los colonos" y "sitios adyacentes" teniendo en cuenta "los propósitos de la ley y las circunstancias económicas y de organización industrial a ser regidas por ella." La interpretación dada por la Junta a dichos términos precisamente logró evitar la interpretación irrazonable y onerosa a que hicimos referencia en *Colonos de Santa Juana,* supra, o sea, el imponerle a las centrales la obligación de suministrar servicio de grúa y personal en la finca de cada uno de los miles de colonos existentes en Puerto Rico sin costo alguno para éstos. Establecida la existencia de esta situación en el citado caso, debemos presumir en éste, en ausencia de prueba en contrario, que dicha situación continúa subsistiendo (Art. 102, inciso 31 de la Ley de Evidencia—32 L.P.R.A. sec. 1887, inciso 31).

5. Tampoco puede concluirse que la resolución de la referida Junta, impugnada por los peticionarios en este caso, es una interpretación forzada a favor de las centrales y contraria al espíritu de liberalidad que en su interpretación debe tener la Ley Azucarera y más específicamente, su Art. 6, a favor de los colonos. Aunque es cierto que dicha ley da a la Junta amplia facultad para investigar y decidir "en ánimo de proteger a los colonos quienes . . . constituyen un grupo económico débil", no es menos cierto que la Ley Azucarera provee una distribución ordenada de los costos y de los beneficios entre colonos y centrales. No pudo ser el propósito legislativo que esta ley beneficiase a los colonos al extremo de afectar adversamente toda la economía de la industria imponiéndole a las centrales obligaciones irrazonablemente onerosas. *Colonos de Santa Juana,* supra; *South P.R. Sugar Co.* v. *Junta,* 82 D.P.R. 859 (1961). La resolución en cuestión no es otra cosa que una aclaración por definición de nuestra decisión en *Colonos de Santa Juana,* supra, de manera que la impugnación de los peticionarios va más bien dirigida a nuestro dictamen en dicho caso, es decir que es contrario a

la verdadera intención legislativa. Pero, lo cierto es que la Asamblea Legislativa ha tenido amplias oportunidades durante los ocho años transcurridos desde dicho dictamen para corregir la situación y no lo ha hecho, a pesar de que ha aprobado varias enmiendas a la Ley Azucarera, pero no con referencia a disposición alguna de su Art. 6. Debemos concluir, por lo tanto, que el dejar la Asamblea Legislativa de actuar con respecto a nuestra interpretación del inciso (a) del Art. 6 en *Colonos de Santa Juana*, supra, constituye una aprobación y ratificación legislativa de dicha interpretación y que ésta debe seguirse hasta que por acción legislativa posterior se enmiende la ley. *Missouri* v. *Ross*, 299 U.S. 72 (1936); *U.S.* v. *Elgin T & E Ry.*, 298 U.S. 492 (1936); *Ponch* v. *Prudential Ins. Co.*, 97 N.E. 731 (N.Y. 1912); 50 Am. Jur. 318.

■ 6. Señalan los peticionarios que la resolución impugnada priva a los recurrentes de propiedad sin el debido proceso de ley. Al sostener la constitucionalidad del Art. 6(a) en *Eastern Sugar Associates*, supra, dictaminamos que: "Pero como dijimos en los casos de *Antonio Roig, Sucrs.*, supra, e *Eastern Sugar Associates* v. *Junta Azucarera*, Núm. 3, resueltos en el día de hoy, los arts. 5, 6 y 7 [de la Ley Azucarera] han de ser leídos conjuntamente con el fin de hallar la compensación para los colonos sobre una base global. *Solamente si la prueba demostrara que estos artículos, leídos conjuntamente, resultan en una participación confiscatoria para la central, infringirían los mismos el debido procedimiento. Y la prueba de esta índole no ha sido ofrecida ni aquí ni en ninguno de dichos casos.*" (Énfasis nuestro.)

Para sostener este apuntamiento los peticionarios se limitaron a indicar que resultaba "obvio" que la interpretación de la Junta del caso de *Colonos de Santa Juana*, supra, está privando a los peticionarios de propiedad sin el debido proceso de ley.

Los peticionarios no han aducido prueba para sostener su contención, demostrativa de que lo que ellos han recibido como participación de sus cañas sobre una base global, y no considerando únicamente lo que reciben bajo el referido Art. 6, es una participación confiscatoria. En ausencia de tal prueba aducida ante la Junta no podemos considerar la cuestión. *Piovanetti* v. *Vivaldi,* 80 D.P.R. 108 (1957), escolio núm. 8, a la pág. 122.

7. En la vista oral ante nos, se adujo que no tenemos jurisdicción para considerar este recurso de revisión porque los peticionarios no juraron su solicitud a la Junta Azucarera para que ésta reconsiderara su dictamen en este caso; que el juramento de dicha reconsideración es un requisito indispensable para perfeccionar el recurso de revisión en casos como éste.

Este Tribunal tiene facultad para revisar, *"de acuerdo con los términos y condiciones establecidos por ley,"* las decisiones de la Junta Azucarera (4 L.P.R.A. sec. 35). La Ley Azucarera de Puerto Rico dispone que puede solicitarse revisión ante este Tribunal de una resolución u orden de la referida Junta (5 L.P.R.A. sec. 402). La misma disposición previamente provee que la parte perjudicada podrá solicitar la reconsideración de la resolución u orden dentro de determinados términos y que "La solicitud de reconsideración debe formularse bajo juramento y expresar los hechos y fundamentos legales en que se basa." En este caso la solicitud de reconsideración se radicó dentro de tres días de la fecha de la resolución impugnada, pero no se formuló bajo juramento.

En repetidas ocasiones hemos resuelto que para que este Tribunal adquiera jurisdicción de los recursos interpuestos ante él, es indispensable que se cumpla estrictamente con las disposiciones de la ley que los reglamenta. *Vázquez* v. *Rivera,* 69 D.P.R. 947 (1949). En *Rodríguez* v. *Comisión Industrial,* 61 D.P.R. 222 (1942) y en *Amenguar* v. *Comisión Industrial,* 49 D.P.R. 10 (1935), resolvimos que este

Tribunal carece de jurisdicción para conocer del recurso de revisión de una resolución u orden de la Comisión Industrial si no se ha pedido previamente la reconsideración de la orden o resolución de aquélla y la misma ha sido denegada. (11 L.P.R.A. sec. 12.) Esta cuestión de falta de jurisdicción puede levantarse por primera vez en apelación por las partes o por el Tribunal *motu proprio. Piovanetti* v. *Vivaldi,* 80 D.P.R. 108 (1957), escolio número 8; *Ponce* v. *F. Badrena e Hijos, Inc.,* 74 D.P.R. 225 (1952), escolio número 6.

■ Convenimos que la radicación de una reconsideración es un requisito previo e indispensable en el perfeccionamiento del recurso de revisión provisto por la Ley Azucarera. Pero, a nuestro juicio, el hecho de que no se jurase la referida solicitud es una mera irregularidad que en casos procedentes de agencias administrativas, particularmente cuando la reconsideración se basa en hechos y circunstancias previamente alegados y considerados por la agencia, como en el caso ante nos, no constituye un defecto jurisdiccional que prive a este Tribunal de conocer de este recurso en ausencia de disposición expresa estatutoria al efecto. *W. H. Lailer & Co.* v. *C. E. Jackson Co.,* 75 F.Supp. 827 (D.C. Mass. 1948).

*Se confirmará la resolución de la Junta Azucarera de Puerto Rico.*