ANDRÉS CIRINO y OTROS, demandantes y recurridos, *v.* AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, demandada y recurrente.

*Número:* R-63-70          *Resuelto:* 29 de diciembre de 1964

*José A. Arabía,* y *Carlos Santos Correa,* abogados de la recurrente; *W. Luyando Charneco,* abogado de los recurridos.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

El Juez Asociado Señor Ramírez Bages emitió la opinión del Tribunal.

Los recurridos, Andrés Cirino y once personas más demandaron a la recurrente, Autoridad de las Fuentes Fluviales de Puerto Rico, alegando que como consecuencia de la muerte de su hermano Nicolás Cirino, ocurrida al venir en contacto éste con un cable eléctrico de alta tensión propiedad de la recurrente el cual se cayó al suelo por causas conocidas por aquélla, sufrieron intensas angustias mentales e incurrieron en varios gastos, el monto de todo lo cual estimaron en $75,000. En su contestación, la recurrente negó fuese responsable pero, más tarde, en una conferencia con antelación al juicio aceptó su responsabilidad civil por la muerte de Nicolás Cirino, aunque solamente en cuanto a aquellos recurridos que tuvieren derecho a reclamar y probaren daños.

Visto el caso, el tribunal de instancia determinó el parentesco existente entre los recurridos y el fallecido, concluyó que entre los recurridos de apellidos Osorio y Pizarro y Nicolás Cirino existieron relaciones de familia, se reconocían entre sí como hermanos y se prestaban servicios y ayuda en casos de necesidad por lo que dichos recurridos, con excepción de dos de ellos, sufrieron algo más que una pena pasajera con motivo de la muerte de Nicolás Cirino. Concluyó, además, que el fallecido no mantuvo relaciones de familia con sus tres hermanos de apellido Cirino. Por lo tanto, declaró con lugar la

demanda en cuanto a siete de los demandantes, calculando los daños de cada uno de ellos en la suma de $500 más $12 que Andrés Cirino aportó para los gastos de entierro y funeral, y la denegó en cuanto a los demás reclamantes.

La recurrente apunta que el tribunal de instancia ha incurrido en tres errores los que consideraremos a continuación:

1. Erró el tribunal al concluir que Nicolás Cirino, Pedro y Silveria Pizarro y Alfonso, Verena, Juana, Dionisia, Alberto, Alberta y Santiago Osorio son hijos de Luis Pizarro y por lo tanto hermanos de un sólo vínculo de Nicolás Cirino, sin prueba suficiente para ello.

La prueba de dicho parentesco consistió de certificaciones negativas del Registro Demográfico, partidas de bautismo y testimonio oral que la recurrente arguye no es prueba admisible en este caso, habiendo objetado su presentación oportunamente por ser de referencia.

Con la objeción de la recurrente, se admitió en evidencia la partida de bautismo del fallecido, la de Pedro Pizarro y la de Andrés Cirino, así como certificaciones .negativas sobre acta de nacimiento con respecto a tales personas, más la de Silveria Pizarro. Se impugnó también la partida de bautismo de Ángel Cirino pero ésta no se admitió ya que se presentó el certificado de su nacimiento. En apoyo de su impugnación de las certificaciones negativas cita la recurrente los casos de *Cerecedo* v. *Medina*, 27 D.P.R. 821 (1919), y *González* v. *Rivera*, 42 D.P.R. 313, 316 (1931). En el primero se trataba de una demanda que solicitaba la nulidad de la venta de una finca en pago de contribuciones. El fundamento para sostener la nulidad consistía en que no se notificó a ciertos acreedores hipotecarios del embargo realizado por el Tesorero, según lo prescrito por el Código Político. Con el objeto de establecer este hecho se acompañó una certificación expedida por el Tesorero de Puerto Rico creditiva de que de un examen de los

autos del embargo y venta en cuestión aparecía que ciertos acreedores hipotecarios no habían sido notificados. Dijimos que el documento de su faz era claramente inadmisible y en apoyo de esta conclusión citamos la doctrina de la ley común al efecto de que a falta de estatuto la certificación negativa de un funcionario no constituye prueba de que en los récords no aparece determinado hecho y se dice que tal prueba negativa requiere la presentación del testimonio bajo juramento del funcionario al efecto de que se ha hecho un examen y de los resultados del mismo. En *González*, supra, reiteramos esta doctrina al confirmar que certificaciones del Registro de la Propiedad, del Tesorero y del Departamento de Sanidad de Puerto Rico, que en el fondo son certificaciones negativas, de las que se extrae que determinada persona no tenía vaquería en Carolina, no merecen valor ni deben estimarse como prueba. Tanto en *Cerecedo*, supra, como en *González*, supra, se trataba de certificaciones que aunque negaban la existencia de determinados hechos no podían justificar de por sí la no existencia de los mismos. En estos casos la expedición de tales certificaciones no estaba autorizada por ley alguna ni eran los funcionarios en cuestión los encargados por ley de allegar y conservar disponible la información con respecto a la cual se solicitaron las certificaciones negativas.

La situación en el caso que nos ocupa se distingue de los anteriores pues el Art. 38 de la Ley Núm. 24 de 22 de abril de 1931 (24 L.P.R.A. sec. 1237) (¹) es de aplicación. Esta dis-

---

(¹) El referido Art. 38 dispone en parte que:

"A petición de parte interesada, el Secretario de Salud o la persona autorizada por él, suministrara copia certificada de cualquier certificado de nacimiento, casamiento o defunción que se haya inscrito y registrado en el registro general de acuerdo con las disposiciones de esta Parte, . . . . La copia del récord de cualquier nacimiento, casamiento o defunción, después que sea certificada por el Secretario de Salud o por la persona autorizada por él, constituirá evidencia prima facie ante todas las cortes de justicia de los hechos que consten en la misma. Por la búsqueda de cualquier documento o información en el archivo del Departamento de Salud, *cuando no se expida copia certificada alguna*, los interesados pagarán la suma de cincuenta (50) centavos en sellos de rentas internas por cada

posición no tan sólo autoriza al Secretario de Salud a expedir copia certificada de cualquier certificado de nacimiento, casamiento o defunción, la que constituirá evidencia *prima facie* ante todas las cortes de justicia de los hechos que constan de las mismas, (²) sino también a expedir *certificados y notas negativas*.

Sostiene la recurrente, sin embargo, que dicha disposición no provee que tales notas negativas constituyen evidencia *prima facie* como lo estatuye en el caso de las copias certificadas.

Las referidas notas negativas son documentos públicos de acuerdo a lo dispuesto en el Art. 1170 del Código Civil (31 L.P.R.A. sec. 3271), en el Art. 49 de la Ley de Evidencia (32 L.P.R.A. sec. 1783) y en el Art. 45 de la Ley de Evidencia (32 L.P.R.A. sec. 1762). (³)

---

hora o fracción de hora que se emplee en buscar dicho documento o información, y los que se cancelarán adhiriéndole la mitad del sello cancelado en la solicitud *y la otra mitad en la nota negativa que se expida*; Disponiéndose, además, que el Secretario de Salud llevará un récord de todos los sellos de rentas internas cancelados *por concepto de copias de certificados y notas negativas expedidas por él*, o sus representantes debidamente facultados". (Énfasis nuestro.)

(²) La Sec. 1071-6 del Título 24 de R.&R.P.R., pág. 146, faculta a los secretarios municipales a cargo de los libros del antiguo Registro Civil de Puerto Rico a expedir certificaciones de las actas y asientos contenidos en dichos libros, o *negativos si éstos no existieren*, mediante el pago de los derechos que fija la ley. La misma regla regirá para la expedición de copias certificadas de los documentos que se encuentren archivados en el Registro General Demográfico.

(³) El Art. 45 de la Ley de Evidencia dispone:

"Son documentos públicos los que se determinan en la sección 3271 del título 31."

El Art. 1170 del Código Civil provee que:

"Son documentos públicos los autorizados por un notario o empleado público competente con las solemnidades requeridas por la ley."

El Art. 49 de la Ley de Evidencia dispone:

"Los documentos públicos se dividen en 4 clases:

1. leyes
2. protocolos judiciales
3. otros documentos oficiales
4. archivos públicos de documentos públicos o privados llevados en P.R."

El Art. 69 de la Ley de Evidencia (32 L.P.R.A. sec. 1803 (6)) dispone que los documentos oficiales, en adición a aquéllos a que se hace referencia específica en esta disposición, podrán probarse mediante el original o copia certificada por el guardador legal de los mismos.

Tenemos pues que las certificaciones negativas al efecto de que en el Registro Demográfico o en el antiguo Registro Civil no aparece determinado asiento o inscripción están expresamente autorizadas por ley, constituyen documentos públicos (oficiales) y sirven el propósito de acreditar la ausencia de la inscripción en dicho Registro de un nacimiento, casamiento o defunción. Castán, *Derecho Civil Español, Común y Foral* (1955), Tomo I, Vol. II, pág. 392; *Enciclopedia Jurídica Española*, Tomo 27, pág. 21. Concluimos, por lo tanto, que al igual que las certificaciones positivas, las certificaciones negativas en cuestión, constituyen prueba *prima facie* de su constancia ya que debemos suponer que al autorizarlas, la Asamblea Legislativa tenía el propósito de que fuesen tan efectivas como cualquier otro documento público (oficial), y que no habría de legislar en forma inefectiva, o de realizar un acto inútil. *Rosario Mercado* v. *Comisión Industrial*, 85 D.P.R. 336, 341 (1962).

Sostiene la recurrente que al disponer dicha ley que las certificaciones positivas constituyen evidencia *prima facie* y no proveer lo mismo con respecto a las negativas, éstas no pueden constituir evidencia de la misma índole y por consiguiente no era admisible tal certificación en ausencia de prueba testifical del examen que se ha hecho y de los resultados del mismo.

Habiéndose autorizado por ley la expedición de las referidas notas negativas, ¿que garantía adicional ofrece el que el funcionario testifique bajo juramento que ha hecho un examen de los libros o récords bajo su custodia y de los resultados del mismo? ¿Va a repetir lo que ha *consignado* en un documento que la ley le autoriza a expedir?

Con relación al principio de que el funcionario testifique, Wigmore[4] señala que bajo la Ley Común, el funcionario encargado o guardador legal no tenía poder para certificar que un documento no existía o que determinado asiento o inscripción no aparecía de los archivos bajo su custodia. Esta situación hacía necesario prueba testifical bajo juramento de que había hecho un examen y de los resultados del mismo. Comenta Wigmore, que ese principio adolecía de exceso de formalidad e imponía inconvenientes y gastos innecesarios. Y, añade: "Se considerará algún día como uno de los casos más estúpidos de pedantería legal en nuestros anales." Enfatiza Wigmore, que el certificado de un funcionario donde hace constar que ha realizado una búsqueda diligente en los archivos bajo su custodia y que no aparece determinado asiento o inscripción debe ser suficiente en sí mismo para evidenciar tal hecho.

En American Jurisprudence,[5] bajo el epígrafe de "Récords Administrativos" se expone que "récords e informes preparados en el desempeño de un deber público por funcionarios públicos son admisibles en evidencia no sólo como prueba de los hechos que constan en los mismos sino para demostrar la ausencia de asientos e inscripciones y para probar por razón de tal ausencia que tal evento no tuvo lugar o que algo no fue hecho."

Wigmore[6] clasifica los informes oficiales (*official statements*) como una excepción a la regla de la prueba de referencia. Explica que se justifica esa excepción por el principio de necesidad (inconveniencia de requerir la presencia del oficial o funcionario encargado) y porque son preparados en el desempeño de un deber público y bajo la sanción de un juramento oficial.

[4] *Wigmore On Evidence*, 3rd ed., vol. V, sec. 1678, pág. 752.

[5] 20 Am. Jur., sec. 1023, pág. 862.

[6] *Wigmore On Evidence*, 3rd ed., vol. V, sec. 1630, pág. 512. Véase *"La Regla de la Prueba de Referencia y sus Excepciones"*—Pedro Muñoz Amato, Vol. 13 Rev. Jur. U.P.R., pág. 90.

■ Resulta obvio que la interpretación del estatuto sugerida por la recurrente se basa en una parte aislada de una disposición de la ley. Tal forma de interpretar un estatuto no es favorecida, pues conflige con la doctrina que en varias ocasiones hemos aplicado al efecto de que al interpretar una ley hay que leerla ·y considerarla en su· totalidad, no fraccionalmente y para encontrarle su significado, el tribunal tiene que tener en cuenta el propósito de la misma. *Arroyo Merino* v. *Junta Azucarera,* 89 D.P.R. 622 (1963); *Álvarez & Pascual, Inc.* v. *Srio. Hacienda,* 84 D.P.R. 482 (1962); *Eastern Sugar Associates* v. *Junta Azucarera,* 77 D.P.R. 358 (1954); *A. Roig, Sucrs.* v. *Junta Azucarera,* 77 D.P.R. 342 (1954); *Petrovich* v. *Sec. Hacienda,* 77 D.P.R. 164 (1954).

■ Consideraremos conjuntamente la cuestión de la admisibilidad de las partidas de bautismo y de la prueba testifical sobre el parentesco de los recurridos Osorio y Pizarro con el fallecido por estar ambas íntimamente relacionadas entre sí. En cuanto a las partidas, se arguye que no son documentos públicos y sí prueba de referencia. Se opuso la recurrente a la admisión de la prueba testifical "por entender que en una acción de daños y perjuicios no se podía presentar la misma y porque en el supuesto de que se pudiese, lo dispuesto en el Art. 250 del Código Civil [31 L.P.R.A. sec 983] (⁷) la hacían inadmisible por cuanto los demandantes no habían presentado prueba alguna que demostrara al Hon. Tribunal sentenciador razón por la cual la regla prescrita en el citado artículo no debía cumplirse." En cuanto a las partidas de bautismo, adelantamos que dan fe del hecho que motiva su otorgamiento y de la fecha de éste, o sea, de la administración del bautismo y la fecha del mismo y de nada más.

---

(⁷) El Art. 250 del Código Civil dispone que:
"Las actas del registro serán la prueba del estado civil, la cual sólo podrá ser suplida por otras en el caso de que no hayan existido aquéllas o hubiesen desaparecido los libros del registro, o cuando ante los tribunales se suscite una contienda."

*Pueblo* v. *Vargas*, 69 D.P.R. 382 (1948) ; *Aguayo et al.* v. *García*, 11 D.P.R. 274 (1906).

■ También es conveniente reiterar la doctrina establecida por este Tribunal al efecto de que la causa de acción sustantiva para reclamar daños por la muerte de alguna persona causada por la culpa o negligencia de otra es el Art. 1802 del Código Civil (31 L.P.R.A. sec. 5141). *Correa* v. *Autoridad de las Fuentes Fluviales*, 83 D.P.R. 144 (1961) ; *Hernández* v. *Fournier*, 80 D.P.R. 93 (1957). El ámbito del Art. 1802 se ha ido ampliando hasta que en *Correa*, supra, resolvimos que no debe quedar restringido al *ius sanguinis*, o sea, que una persona puede reclamar y obtener compensación por los daños morales que realmente sufriere con motivo de la muerte de otra ocasionada por la culpa o negligencia de un tercero aunque el reclamante no esté relacionado con el fallecido por razón de parentesco. Por supuesto que en cuanto a daños morales siempre hay que probar sufrimientos y angustias morales profundas y no bastaría una pena pasajera como base de la acción. *Hernández*, supra. En el caso ante nos el juez sentenciador al admitir la referida prueba de parentesco expuso que: "En cuanto a ellos, [los reclamantes hijos de un mismo padre—el interfecto—] puede tomarse en consideración el hecho del parentesco para que éste, unido a otros hechos, pueda ser considerado para determinar si real y efectivamente sufrieron los daños." Más adelante, en la misma resolución, dicho juez añadió que: "[e]n el presente caso no se trata de establecer la filiación de los demandantes y del interfecto en el sentido que usualmente el término conlleva en derecho. Meramente se trata de probar la relación de parentesco para que ésta sea considerada como un hecho que arroje luz o relación con los daños sufridos por los demandantes." Convenimos que a esos efectos era admisible, siempre y cuando se demuestre, como lo hacemos a continuación, que las actas del Registro Demográfico no podían ser suplidas ya que no se habían

inscrito los nacimientos de las partes, según lo comprobaban las certificaciones negativas de referencia, o por no informarse en las certificaciones expedidas, ya que no consta del Registro, el nombre del padre de algunos de los reclamantes. El caso de *Mercado* v. *American Railroad Co.*, 61 D.P.R. 228 (1943), no está en conflicto con esta conclusión. Por el contrario, sostiene que en un caso donde la acción la establece el pariente en su propio beneficio, la mejor prueba es el acta del Registro Civil—hoy el certificado de nacimiento. Una vez establecido esto, entra en juego el Art. 250 del Código Civil, como veremos enseguida.

Alega la recurrente que siendo las actas de nacimiento la mejor prueba del estado civil de acuerdo con el referido Art. 250 del Código Civil, no procedía admitir las partidas de bautismo y la prueba testifical sobre parentesco, a menos que se adujese alguna razón dentro de las excepciones enumeradas en dicho artículo, cosa que no se hizo.

En *Camacho* v. *Balasquide*, 19 D.P.R. 590 (1913), al considerar el Art. 320, hoy 250, del Código Civil, dijimos:

"Con respecto al artículo 320 del Código Civil y a la debida interpretación que ha de dársele puede dicho artículo ser considerado como ley elemental y que el principio legal contenido en el mismo ha sido modificado por la Ley de Evidencia. La certificación de inscripción hecha en el registro civil relativa al nacimiento del niño *no* puede ser considerada como un documento incontrovertible . . . y siendo esto así el demandante pudo correctamente ofrecer *prueba testifical* para probar que el contenido del mismo *no era correcto*." (Énfasis nuestro.)

En *Abintestato de Félix Matos*, 63 D.P.R. 1012 (1944), interpretamos la disposición "cuando ante los tribunales surge una contienda" que es una de las excepciones a la regla provista por el Art. 250 de que "Las actas del Registro serán prueba del estado civil." (8) Resolvimos en este caso que

(8) Sobre el concepto estado civil, véanse S. Santamaría, *Comentarios al Código Civil*, Tomo I, págs. 358, 359; Castán, *Derecho Civil Español, Común y Foral*, Tomo I, Vol. II, págs. 369, 370; Colin y Capitant, *Derecho*

prueba testifical y prueba secundaria documental de la existencia de un matrimonio celebrado fuera de Puerto Rico era admisible, en ausencia del certificado de matrimonio, pues había surgido una contienda judicial con respecto a la existencia del matrimonio.

En *Burgos* v. *Medina,* 35 D.P.R. 529 (1926), simplemente reiteramos la regla del Art. 250 del Código Civil al efecto de que prueba secundaria, en este caso testifical, no es admisible para probar el estado civil de una persona, *cuando no se ha demostrado razón,* de acuerdo con lo dispuesto en el referido Art. 250, para ofrecer tal prueba secundaria.

El Art. 327 del Código Civil español, equivalente al Art. 250 de nuestro Código Civil, ha sido interpretado en el sentido de que prueba supletoria del estado civil es admisible cuando los hechos relativos a dicho estado no constan del registro así como cuando surge una contienda en los tribunales con respecto al referido estado. Castán, *Derecho Civil Español, Común y Foral,* Tomo I, pág. 391; Scaevola, *Código Civil,* Tomo V, 5ta. ed. 1943, pág. 688; Pedreira, *Código Civil a Través de la Jurisprudencia,* Tomo I, pág. 400; S. Santamaría, *Comentarios al Código Civil,* Tomo I, pág. 362; Seix, *Enciclopedia Jurídica Española,* Tomo 27, pág. 23; Colin y Capitant, *Derecho Civil,* Tomo I, ed. 1952, págs. 805 y 840.

En el caso ante nos se ofrecieron en evidencia las partidas de bautismo de determinados recurridos, luego de presentadas las certificaciones negativas donde se acreditaban que no existía constancia del nacimiento de los mismos en el Registro Demográfico. Y la prueba testifical sobre el parentesco de ciertos recurridos con el fallecido se ofreció al no aparecer del referido Registro el nombre del padre de determinados recurridos, según la constancia de las certificaciones

*Civil,* Tomo I, págs. 805 y ss.; Seix, *Enciclopedia Jurídica Española,* Tomo XV, pág. 109; Seix, *Nueva Enciclopedia Jurídica Española,* Tomo VIII, págs. 862 y 886.

correspondientes. Bajo tales circunstancias, concluimos que tanto las partidas de bautismo como la prueba testifical constituían prueba secundaria del estado civil de determinados recurridos admisible como prueba en ausencia de constancias con respecto a dicho estado en el Registro Demográfico, de acuerdo con lo dispuesto en el Art. 250 del Código Civil.

■ 2. Erró el tribunal de instancia al conceder a la recurrida Dionisia Pizarro Osorio la suma de $500 de compensación por los sufrimientos morales que padeció con motivo de la muerte de Nicolás Cirino. Tiene razón. Esta recurrida vivía en Nueva York. Vino a Puerto Rico al notificársele el suceso y asistió a los novenarios. De la prueba no aparece cuánto tiempo llevaba en Nueva York y cuáles eran sus relaciones con el fallecido. No surgen de la prueba los sufrimientos y angustias morales profundas por las que atravesase Dionisia Pizarro debido a la pérdida de su medio hermano, como lo requiere la doctrina que establecimos en *Hernández,* supra. Cf. *Infante* v. *Leith,* 85 D.P.R. 26, 37 (1962).

3. No erró el tribunal de instancia al condenar a la recurrente al pago de honorarios de abogado, pero bajo la circunstancia de este caso determinamos que la cuantía justa y razonable de tales honorarios de abogado es la suma de $250.

*En vista de lo expuesto, se modificará la sentencia en los extremos previamente indicados y así modificada se confirmará.*